[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12094

_____

D.C. Docket No. 5:09-cv-00107-WTH-GRJ


MICHAEL TURNER,

Petitioner - Appellant,

versus

WARDEN COLEMAN FCI (MEDIUM),

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 22, 2013)

Before WILSON and HILL, Circuit Judges, and HUCK,* District Judge.

WILSON, Circuit Judge:

_____

* Honorable Paul C. Huck, United States District Judge for the Southern District of
Florida, sitting by designation.

Michael Turner, a federal prisoner, appeals the district court's dismissal of his 28 U.S.C. § 2241 petition for a writ of habeas corpus, arguing that his § 2241 petition is cognizable under the savings clause of 28 U.S.C. § 2255 because intervening changes in the law have rendered § 2255 "inadequate or ineffective to test the legality of his detention." § 2255(e). Specifically, Turner argues that he no longer qualifies for an enhanced sentence pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), because under law passed down since his initial § 2255 motion, the offenses that formed the predicate for the enhancement no longer qualify as "violent felonies" under the ACCA. Finding no error in the district court's classification of Turner's convictions as violent felonies under § 924(e), we affirm.

## I. Background and Procedural History

In 2004, Turner pleaded guilty, pursuant to a written plea agreement, to possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e). During his plea colloquy, Turner acknowledged that he had previously been convicted of: (1) aggravated battery, (2) shooting into a building, (3) battery on a law enforcement officer, and (4) possession of a firearm by a convicted felon. Turner repeatedly acknowledged that because he had previously been convicted of three qualifying violent felonies, he would be subject to a 15-year mandatory minimum sentence under the ACCA. *See* 18 U.S.C. § 924(e).

2

In preparation for Turner's sentencing, the United States Probation Office prepared a Presentence Investigation Report (PSR), which detailed Turner's long criminal history.  Of particular relevance to this appeal, the PSR included descriptions of Turner's previous convictions for: (1) shooting into an occupied building and aggravated assault; (2) battery on a law enforcement officer; and (3) aggravated battery.  With regard to the convictions for shooting into an occupied building and aggravated assault, the PSR explained that in 1981, Turner had fired two shots at a man standing outside of his home, and that one of the two shots had entered through the front window of the home.  As to the conviction for battery on a law enforcement officer, the PSR relayed that in 1986, Turner fled from officers after an apparent drug transaction, resisted their attempt to subdue him, and pushed one of deputies against a wall, injuring her left hand.  Finally, the PSR explained that Turner's conviction for aggravated battery stemmed from an incident in which Turner stabbed a man in the chest in 1996.  Turner did not object, either before or during his sentencing, to the PSR's factual descriptions of these offenses.

The PSR initially calculated Turner's guideline range at 77 to 96 months; however, because he had three convictions for the violent felonies referenced above, Turner's sentence was subject to the ACCA enhancement, which mandated a minimum sentence of 15 years' imprisonment.  *See id.*  At his sentencing, Turner's sole objection was that, because the convictions underlying the ACCA

3

enhancement were not set out in the indictment, stipulated to in the plea agreement, or admitted at the plea colloquy, the application of the ACCA enhancement violated the teachings of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004).   Nonetheless, at no point during his plea colloquy or his sentencing did Turner object to the factual assertions set forth in the PSR, including the descriptions of his various crimes.  The district court overruled Turner's objection, adopted the factual findings and guideline applications as set forth in the PSR, and sentenced Turner to 188 months' imprisonment, at the low end of the ACCA-enhanced guideline range.  Had he not been subject to the ACCA enhancement, Turner's maximum sentence would have been 10 years in prison.  § 924(a)(2).

Turner timely appealed, again asserting his *Blakely* challenge.  We affirmed, and the Supreme Court denied certiorari.  *See United States v. Turner*, 133 F. App'x 631, 632 (11th Cir.) (per curiam), *cert. denied*, 546 S. Ct. 921 (2005).  On July 21, 2006, Turner filed a pro se § 2255 motion to vacate, set aside, or correct his sentence, renewing his *Blakely* challenge and arguing for the first time that his guilty plea had been unknowing and involuntary because he was unaware of the ACCA 15-year minimum sentence to which he would be subject.  The district court denied relief.

Three years later, in March 2009, Turner filed pro se the § 2241 petition that forms the heart of the instant dispute.  This time, however, Turner abandoned his

4

*Blakely* challenge and argued that, in light of the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581 (2008), and this court's decision in *United States v. Archer*, 531 F.3d 1347 (11th Cir. 2008), he is "actually innocent of being a[n] armed career offender" because the offenses underlying his ACCA enhancement no longer qualify as violent felonies. He also argued for the first time that the government's use of information from arrest and booking reports in ascertaining the extent of his prior criminal convictions was a violation of the Supreme Court's decision in *Shepard v. United States*, 544 U.S. 13, 16, 125 S. Ct. 1254, 1257 (2005) (holding that, in determining whether a past conviction qualifies as a violent felony under the ACCA, a sentencing court "is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented"). The district court dismissed the § 2241 petition for lack of jurisdiction, finding that Turner's petition was not cognizable because he did not satisfy the savings clause of § 2255(e). The district court also held that Turner's *Shepard* claim was procedurally barred because he had an opportunity to raise it in his initial § 2255 motion but failed to do so. This appeal followed.

## II. Discussion

Turner wages a two-pronged attack upon the district court's dismissal of his § 2241 petition. He first argues that *Begay* and other intervening changes in the

5

law since the disposition of his initial § 2255 motion have rendered erroneous the violent felony enhancement he received under the ACCA.  He then argues, pursuant to *Shepard*, that the sentencing court erroneously relied upon police reports and arrest affidavits to prove the substance of his prior convictions.  We review de novo the availability of habeas relief under § 2241, *Dohrmann v. United States*, 442 F.3d 1279, 1280 (11th Cir. 2006), and "we may affirm for any reason supported by the record, even if not relied upon by the district court."  *United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008) (per curiam) (internal quotation marks omitted).

## 1.  The Intersection of §§ 2255 and 2241

"Typically, collateral attacks on the validity of a federal sentence must be brought under § 2255."  *Darby v. Hawk-Sawyer*, 405 F.3d 942, 944 (11th Cir. 2005) (per curiam).  Once a petitioner has filed his initial § 2255 motion, however, he is barred from making second and successive motions except in two carefully delineated circumstances, neither of which applies here.  *See* 28 U.S.C. § 2255(h) (requiring the court of appeals to certify the existence of either newly discovered evidence or a new rule of retroactively applicable constitutional law before a petitioner can file a second or successive § 2255 petition).  In addition, pursuant to § 2255(e), the so-called "savings clause," a prisoner may file a § 2241 petition if the § 2255 remedy "is inadequate or ineffective to test the legality of his

6

detention." § 2255(e); *see Sawyer v. Holder*, 326 F.3d 1363, 1365 (11th Cir. 2003). The burden of demonstrating the inadequacy or ineffectiveness of the § 2255 remedy rests squarely on the petitioner. *McGhee v. Hanberry*, 604 F.2d 9, 10 (5th Cir. 1979) (per curiam).[1]

What, then, must a petitioner demonstrate to open the portal of § 2241 through the § 2255 savings clause? We have previously indicated that the savings clause of § 2255 may permit a petitioner to bring a claim under § 2241 when: "1) th[e] claim is based upon a retroactively applicable Supreme Court decision; 2) the holding of that Supreme Court decision establishes the petitioner was convicted for a nonexistent offense; and, 3) circuit law squarely foreclosed such a claim at the time it otherwise should have been raised in the petitioner's trial, appeal, or first § 2255 motion." *Wofford v. Scott*, 177 F.3d 1236, 1244 (11th Cir. 1999).[2] Sitting en banc, however, we recently retreated from the purported three-factor test enumerated in *Wofford*, calling it "only dicta," and explaining that "[t]he actual holding of the *Wofford* decision . . . is simply that the savings clause does not cover sentence claims that could have been raised in earlier proceedings."

---

[1] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), all decisions of the former Fifth Circuit announced prior to October 1, 1981, are binding precedent in this circuit.

[2] Even if a petitioner succeeds in making *Wofford*'s three-part showing, he would then need to demonstrate "actual innocence" of the crime for which he was convicted to demonstrate an entitlement to relief. 177 F.3d at 1244 n.3; *see Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998) (explaining that "'actual innocence' means factual innocence, not mere legal insufficiency").

*Gilbert v. United States*, 640 F.3d 1293, 1319 (11th Cir. 2011) (en banc), *cert. denied*, 132 S. Ct. 1001 (2012).  We then held that "the savings clause does not authorize a federal prisoner to bring in a § 2241 petition a claim, which would otherwise be barred by § 2255(h), that the sentencing guidelines were misapplied in a way that resulted in a longer sentence not exceeding the statutory maximum." *Id.* at 1323.

At the same time, our decision in *Gilbert* explicitly left open the question of whether the savings clause would permit a prisoner to open the § 2241 portal if he claimed a "pure *Begay* error"—that is, an "error[] in the application of the 'violent felony' enhancement, as defined in [the ACCA,] 18 U.S.C. § 924(e)(2)(B), resulting in a higher statutory minimum and maximum sentence under § 924(e)." *Id.* at 1319 n.20 (explaining that such an error "would necessarily have resulted in the defendant being sentenced to a term of imprisonment that exceeded what would have been the statutory maximum without the error").  The upshot of *Gilbert*, then, is that the last bastion in which a petitioner claiming an error in the application of the sentencing guidelines can possibly seek refuge through § 2241 is when his claims involve an intervening change in the law that renders erroneous the ACCA violent felony enhancement used to enhance his sentence beyond the statutory maximum.

Applying these principles to the facts at hand, we easily dispose of Turner's *Shepard* claim. *Shepard* was decided *before* Turner's initial § 2255 motion in this case; therefore, he had the opportunity to raise it in his § 2255 motion. Section 2255(e)'s "savings clause does not cover sentence claims that could have been raised in earlier proceedings." *Id.* at 1319.

That leaves only Turner's claim that, based on decisions passed down since his § 2255 motion, the predicate offenses underlying his ACCA enhancement no longer qualify as violent felonies, and he was therefore "sentenced to a term of imprisonment that exceeded what would have been the statutory maximum without the error." *Id.* at 1319 n.20. In other words, Turner claims the quintessential "pure *Begay* error." *Id.*; *see Begay*, 553 U.S. at 142, 128 S. Ct. at 1584 (holding that Nevada statute criminalizing driving under the influence is not a violent felony for purposes of the ACCA).

To have any chance of success on his claim, Turner would have to show that he was erroneously classified as an armed career criminal and that, based on the wrongly imposed ACCA enhancement, he is serving a sentence in excess of the statutory maximum. Even then, we have expressly refused to say whether such a showing would be sufficient to open the portal to § 2241.[3] *Gilbert*, 640 F.3d at

---

[3] We harbor some doubt as to whether such a showing, even if properly made, would permit opening the § 2241 portal. After all, the savings clause will only apply if a petitioner can make a showing of actual innocence, and we have previously suggested that "for

9

1323 ("Nor do we decide if the savings clause in § 2255(e) would permit a prisoner to bring a § 2241 petition claiming that he was sentenced to a term of imprisonment exceeding the statutory maximum."). We again sidestep the issue today. Indeed, we need not dip a toe in that boiling cauldron at this juncture because, even assuming such an exception exists and that a showing of pure *Begay* error would be sufficient to open the § 2241 portal, Turner cannot make such a showing. Instead, our review of the record reveals that the three predicate offenses for which Turner was sentenced as an armed career criminal under the ACCA— battery on a law enforcement officer, aggravated assault/shooting into an occupied building, and aggravated battery—were indeed violent felonies, and that the ACCA enhancement was therefore properly imposed.

## 2. Violent Felonies Under the ACCA

---

the actual innocence exception to apply in the noncapital sentencing context, a movant must show that he is *factually* innocent of the conduct or underlying crime that serves as the predicate for the enhanced sentence." *McKay v. United States*, 657 F.3d 1190, 1198–99 (11th Cir. 2011) (emphasis in original) (explaining, and ultimately agreeing with, the position taken by other circuits), *cert. denied*, 133 S. Ct. 112 (2012). In other words, to say that a petitioner can be "actually innocent" of a sentencing enhancement would require a great deal of both verbal and logical gymnastics. "If guidelines enhancements were crimes, they would have to be charged in the indictment and proven to the jury beyond a reasonable doubt." *Gilbert*, 640 F.3d at 1320. Such a position "turns on treating sentences as convictions, and an argument that depends on calling a duck a donkey is not much of an argument." *Id.* At the same time, we recognize that under the plain language of the savings clause, an intervening change in the law resulting in an erroneously imposed, ACCA-enhanced sentence in excess of the statutory maximum would quite literally create a circumstance in which the § 2255 remedy was "inadequate or ineffective to test the legality of [a prisoner's] detention." § 2255(e).

10

The ACCA mandates a minimum sentence of 15 years' imprisonment for any defendant convicted of being a felon in possession of a firearm and who has three previous convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  § 924(e)(1).  A "violent felony" is defined as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that—
>
> **(i)** has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> **(ii)** is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

§ 924(e)(2)(B).[4]

The first step in determining whether a prior conviction qualifies as a violent felony "is to identify the specific crime at issue, generally using a categorical approach."  *United States v. Pantle*, 637 F.3d 1172, 1175 (11th Cir. 2011) (per curiam) (internal quotation marks omitted), *cert. denied*, 132 S. Ct. 1091 (2012).  "Under this approach, we 'look only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particularized facts disclosed by the record of conviction.'"  *United States v. Alexander*, 609 F.3d

---

[4]    The definition of "violent felony" under the ACCA is virtually identical to the definition of "crime of violence" for purposes of the career offender enhancement of § 4B1.1 of the United States Sentencing Guidelines (USSG), "so that decisions about one apply to the other."  *Gilbert*, 640 F.3d at 1309 n.16.

11

1250, 1253–54 (11th Cir. 2010) (quoting *United States v. James*, 550 U.S. 192, 202, 127 S. Ct. 1586, 1594 (2007)).  However,

> [w]hen the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the 'modified categorical approach' . . .  permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms.

*Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010); *see Shepard*, 544 U.S. at 24, 125 S. Ct. at 1262 (explaining "that any sentence under the ACCA [must] rest on a showing that a prior conviction 'necessarily' involved (and a prior plea necessarily admitted) facts" sufficient to qualify as a violent felony).  And where, as here, the petitioner does not object to the underlying factual assertions contained in a PSR, they are deemed admitted and may be relied upon in making the violent felony determination.  *See United States v. Rosales-Bruno*, 676 F.3d 1017, 1020 (11th Cir. 2012); *United States v. Beckles*, 565 F.3d 832, 843 (11th Cir. 2009) (explaining that "the district court also may base its factual findings on undisputed statements found in the PS[R], because they are factual findings to which the defendant has assented"); *United States v. Bennett*, 472 F.3d 825, 834 (11th Cir. 2006) (per curiam) ("[T]he district court did not err in relying on the undisputed facts in Bennett's PS[R] to determine that his prior convictions were violent felonies under the ACCA and, therefore, that he was an armed career criminal.");

12

*United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PS[R] admits those facts for sentencing purposes.").

Once we determine the precise statutory language upon which a previous conviction was based, we then determine whether the crime at issue constitutes a crime of violence under § 924(e)(2)(B). *See Alexander*, 609 F.3d at 1253–54. Pursuant to § 924(e), any crime punishable by more than a year in prison is a violent felony if it falls within one of three categories. First, under what is sometimes referred to as the "elements clause," a violent felony includes any crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i). In the context of the ACCA, "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson*, 130 S. Ct. at 1271 (emphasis in original). The second category includes the "enumerated crimes" of "burglary, arson, or extortion," and those "inolv[ing] [the] use of explosives." § 924(e)(2)(B)(ii). Finally, under what is commonly known as the "residual clause," a violent felony includes those crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." *Id.*

Several Supreme Court decisions in recent years have added significantly to the precedent we rely upon in determining whether a given offense qualifies as a

13

violent felony.  For example, in *Begay* the Court explained that the presence of the enumerated offenses—burglary, arson, extortion, and those crimes involving the use of explosives—before the residual clause implies that the ACCA residual clause "covers only *similar* crimes [to those enumerated], rather than *every* crime that 'presents a serious potential risk of physical injury to another.'"  553 U.S. at 142, 128 S. Ct. at 1585 (emphasis in original) (quoting § 924(e)(2)(B)(ii)).  The listed crimes, the Court continued, "all typically involve purposeful, violent, and aggressive conduct."  *Id.* at 144–45, 128 S. Ct. at 1586 (internal quotation marks omitted).  The statute's design therefore requires that, to be similar to the crimes listed, offenses classified as violent felonies under the residual provision must also involve "purposeful, violent, and aggressive conduct."  *Id.*

Just three years after its decision in *Begay*, the Court sounded somewhat of a retreat from its decision in that case.  In *Sykes v. United States*, the Court explained that "[i]n general, levels of risk divide crimes that qualify as violent felonies [under the residual provision] from those that do not," and noted that "[t]he sole decision . . . in which risk was not the dispositive factor is *Begay*."  131 S. Ct. 2267, 2275 (2011) (holding that knowingly and intentionally fleeing in a vehicle from a law enforcement officer is a crime of violence under the residual clause).  Further, the Court said, *Begay*'s "purposeful, violent, and aggressive [language] has no precise textual link to the residual clause" and marks "an addition to the statutory text."

14

*Id.* (internal quotation marks omitted).  Furthermore, "[i]n many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk, for crimes that fall within the former formulation and those that present serious potential risks of physical injury to others tend to be one and the same."  *Id.*

We recently enunciated our reconciliation of these two seemingly inconsistent decisions, explaining: "*Sykes* makes clear that *Begay*'s 'purposeful, violent, and aggressive' analysis does not apply to offenses that are not strict liability, negligence, or recklessness crimes."  *United States v. Chitwood*, 676 F.3d 971, 979 (11th Cir.), *cert. denied*, 133 S. Ct. 288 (2012).  In other words, "[o]ffenses that are not strict liability, negligence, or recklessness crimes qualify . . . [under the] residual clause if they categorically pose a serious potential risk of physical injury that is similar to the risk posed by one of the enumerated crimes."  *Id.*

Applying these principles to the facts at hand, we first note that Turner's primary argument—that his conviction for being a felon in possession of a firearm does not qualify as a violent felony—wholly misconstrues the record in this case and the offenses for which he was sentenced under the ACCA.  The district judge adopted the findings of fact and guideline calculations of the PSR.  The PSR listed three prior violent felonies as the basis for the ACCA enhancement: (1) Turner's 1991 conviction for aggravated assault and shooting into an occupied building; (2)

15

his 1986 conviction for battery on a law enforcement officer; and (3) his 1996 conviction for aggravated battery.  Therefore, Turner's previous conviction for being a felon in possession of a firearm did *not* serve as a predicate offense for purposes of the ACCA enhancement, and his argument in this regard must fail. Nonetheless, for the sake of completeness, we proceed to examine each of the predicate offenses underlying Turner's ACCA enhancement in turn.

## A. Aggravated Assault and Shooting into an Occupied Building

Turner's convictions under Florida law for aggravated assault, Fla. Stat. § 784.021, and shooting into an occupied building, Fla. Stat. § 790.19, arose from the same incident; therefore, if either conviction constitutes a violent felony, it can serve as one of the three predicate offenses for purposes of the ACCA.  *See* 18 U.S.C. § 924(e)(1) (requiring that the predicate offenses occur on "occasions different from one another").  In Florida, "[a]n 'aggravated assault' is an assault: (a) With a deadly weapon without intent to kill; or (b) With an intent to commit a felony." Fla. Stat. § 784.021.[5]  An assault, for its part, is "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent."  Fla. Stat. § 784.011.

---

[5]    Though we technically examine the statute as it existed at the time of the relevant conviction, for ease of access we cite throughout this opinion to the present statute, unless the statute or statutes of conviction have been revised in relevant part since the time of Turner's conviction for that offense.

16

Turning to the facts at hand, the undisputed facts in the PSR reveal that Turner was convicted of aggravated assault for going to the victim's home and firing a gun twice at the victim as he stood outside his home. Both shots missed, the second one only narrowly, and the bullet went through the front window of the home. Nonetheless, the underlying facts of Turner's conviction are unnecessary to classify Florida aggravated assault as a violent felony here, because by its definitional terms, the offense necessarily includes an assault, which is "an intentional, unlawful threat by word or act *to do violence* to the person of another, coupled with an apparent ability to do so." *Id.* (emphasis supplied). Therefore, a conviction under section 784.021 will always include "as an element the . . . threatened use of physical force against the person of another," § 924(e)(2)(B)(i), and Turner's conviction for aggravated assault thus qualifies as a violent felony for purposes of the ACCA.[6]

Turner's conviction for shooting into an occupied building also qualifies as a violent felony. Florida Statute section 790.19 provides that "[w]hoever, wantonly or maliciously, shoots at, within, or into, or throws any [deadly] missile . . . at,

---

[6] Even if it did not qualify under the traditional categorical approach, Turner's conviction in this case would certainly qualify under the modified categorical approach. The PSR leaves no doubt that Turner was convicted of an assault carried out with a firearm—a deadly weapon—and we have held that assault with a deadly weapon is included in "the generic crime of 'aggravated assault' so as to qualify as a 'crime of violence'" or a violent felony for purposes of sentencing. *See United States v. Palomino Garcia*, 606 F.3d 1317, 1331–32 (11th Cir. 2010); *see also United States v. Lockley*, 632 F.3d 1238, 1243 n.5 (11th Cir. 2011) ("Though ACCA's 'violent felony' enhancement and the Guidelines' career offender enhancement differ slightly in their wording, we apply the same analysis to both.").

17

within, or in any public or private building, occupied or unoccupied . . . shall be guilty of a felony." For purposes of section 790.19, "'wantonly' means . . . with the knowledge that damage is likely to be done to some person," and "'[m]aliciously' means wrongfully, intentionally, . . . and with the knowledge that injury or damage will or may be caused to another person or the property of another person." *State v. Kettell*, 980 So. 2d 1061, 1067 (Fla. 2008).

We think that under the categorical approach, when a person wantonly or maliciously shoots or throws any deadly missile at any building—occupied or unoccupied—there is a serious potential risk of physical injury sufficient to bring such conduct within the ambit of the residual clause. *See Alexander*, 609 F.3d at 1258–59 (holding that the crime of discharging a firearm from a vehicle within 1000 feet of another person satisfies the residual clause because, in completing the crime, the offender "performs a deliberate act that poses an obvious risk of injury or death to innocent third parties"). Even if the offender believes the building to be unoccupied, the likelihood that an occupant or innocent passerby might be injured by falling debris—or the bullet itself—is real. Our view is fortified by the striking similarity between this crime and its closest analog among the enumerated offenses—that of any crime "involv[ing] the use of explosives." § 924(e)(2)(B)(ii). Both crimes necessarily involve a great risk of violent harm to the offender, the potential victims, and the community at large, and both evince a

18

callousness and indifference to the potential for human suffering that strikes at the heart of what the ACCA was designed to encapsulate. *See Alexander*, 609 F.3d at 1257 ("The firing of a weapon poses a risk that a bystander will be injured by a stray bullet."). These considerations compel the conclusion that a violation of Florida Statute section 790.19, as a categorical matter, falls within ACCA's definition of a violent felony.

Even if it did not qualify under the traditional categorical approach, Turner's conviction for shooting into an occupied building would still constitute a violent felony under the modified categorical approach. The PSR reveals that Turner shot twice at a man and that, upon missing him, the second bullet entered the front window of the man's home. Turner's conviction therefore necessarily includes the wanton or malicious firing of a gun at an occupied building. The Supreme Court has opined that the ACCA's residual clause is intended to ensure increased penalties apply to those individuals who "show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger." *Begay*, 553 U.S. at 146, 128 S. Ct. at 1587. Our point exactly. Not only is Turner "the kind of person who might deliberately point the gun and pull the trigger," *id.*, he *actually did* point the gun and pull the trigger in this case. And though the locus of our inquiry is actually the elements of the offense as it is committed in "the ordinary case" rather than the underlying facts of a particular

19

offense, one can hardly quarrel with the proposition that, where an individual wantonly or maliciously discharges a weapon at a building, such conduct "presents a serious potential risk of injury to another." *James*, 550 U.S. at 208, 127 S. Ct. at 1597. Needless to say, under the modified categorical approach, this conviction qualifies as a violent felony. As demonstrated by the foregoing discussion, then, whether we analyze Turner's conviction for aggravated assault or shooting into an occupied building is a point without a difference, because under either mode of analysis, all roads lead to Rome, and the district court's properly included these convictions as the first predicate offense for Turner's ACCA enhancement.

## B. Battery on a Law Enforcement Officer

In Florida, a person commits a battery if he: "(1) Actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person." Fla. Stat. § 784.03(1)(a). Though battery is ordinarily a misdemeanor, battery against a law-enforcement officer is a felony. Fla. Stat. § 784.07(2)(b).

The Supreme Court recently held that Florida's felony battery offense is not categorically a crime of violence under the ACCA's elements clause. *See Johnson*, 130 S. Ct. at 1274. The Court explained that because the statute could be violated by: (1) "[a]ctually and intentionally touch[ing]" the victim, (2) "[a]ctually and intentionally . . . strik[ing]" the victim, or (3) "[i]ntentionally caus[ing] bodily

20

harm" to the victim, Fla. Stat. § 784.03(1)(a), it did not necessarily include as an element the use of "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson*, 130 S. Ct. at 1271 (emphasis in original). The Court expressly noted that it had no occasion to examine the offense using the modified categorical approach, because the government had offered nothing but the fact of conviction in support of the sentence; nor did it have reason to review the statute under the residual clause, because the government had expressly disclaimed at sentencing any reliance upon the residual clause. *See id.* at 1273–74.

Turner's conviction for battery on a law enforcement officer in this case stems from an incident in which he fled from officers after an apparent drug transaction and ultimately pushed an officer against a wall, injuring her hand. Under the modified categorical approach, pushing the officer against the wall with sufficient force to injure her wrist likely constitutes "[a]ctually and intentionally . . . strik[ing]" the officer and therefore qualifies as a crime of violence under the elements clause of the ACCA. *See id.* at 1273 (explaining the modified categorical approach and noting that "the Government has in the past obtained convictions under the Armed Career Criminal Act" using the approach (citing *United States v. Robledo-Leyva*, 307 F. App'x 859, 862 (5th Cir. 2009) (per curiam) (adopting the modified categorical approach to hold that Florida battery on a law enforcement officer is a crime of violence); *United States v. Luque-Barahona*, 272 F. App'x

521, 524 (7th Cir. 2008) (affirming district court's reliance on statement in PSR that defendant had "pushed the police officer" to find that conviction for Florida battery on a law enforcement officer was a crime of violence))).

Furthermore, and even if Turner's conviction did not qualify under the elements clause, our result would be the same, because Florida battery on a law enforcement officer also qualifies as a violent felony under the residual clause. *See Rozier v. United States*, 701 F.3d 681, 682 (11th Cir. 2012) (explaining our previous, unpublished holding "that although [the defendant's] Florida battery on a law enforcement officer conviction did not qualify as a crime of violence under the elements clause of § 4B1.2(a)(1), it did qualify as a crime of violence under the residual clause"). As we made plain in *Rozier*, the decision in *Johnson* addressed only the elements clause of § 924(e)(2)(B), and *Begay* does not apply outside the narrow confines of strict liability, negligence, and recklessness offenses; therefore, neither opinion impacts our analysis of the Florida battery statute under the residual clause. *See id.* at 683, 685 n.5.

Two of our sister circuits have held that similar offenses involving battery on a law enforcement officer constitute crimes of violence or violent felonies under the residual clause. *See United States v. Dancy*, 640 F.3d 455, 469–70 (1st Cir.), *cert. denied*, 132 S. Ct. 564 (2011) (holding that assault and battery on a police officer is a violent felony under the ACCA because the "crime nearly always poses

22

a serious risk of actual or potential physical force and the likelihood of physical injury" (internal quotation marks omitted)); *United States v. Williams*, 559 F.3d 1143, 1149 (10th Cir. 2009) (finding that battery on a police officer was a crime of violence because it "involves an overt act against the police officer—thereby not only *initiating* a confrontation, but risking a serious escalation in violence" (emphasis in original)).  We join them and expressly so hold today.  In our view, few crimes present a greater "potential risk of physical injury to another" than battery on a law enforcement officer, which necessarily involves an unwanted touching of—and physical confrontation with—an officer of the law.  § 924(e); *see Sykes*, 131 S. Ct. at 2273 (explaining that burglary, an enumerated violent felony under the ACCA, "is dangerous because it can end in confrontation leading to violence").  The charged environment created when a citizen physically confronts the police is a verifiable powder keg, laden with danger to the officer, the defendant, and innocent bystanders alike.  *See Williams*, 559 F.3d at 1149.  That is especially so given that "the use of force is an expected, necessary part of a law enforcement officer's task of subduing and securing individuals suspected of committing crimes."  *Lee v. Ferraro*, 284 F.3d 1188, 1200 (11th Cir. 2002).  Indeed, an officer faced with physical resistance is not only authorized, but is often *duty-bound*, to effectuate an arrest of that individual.  *See Dancy*, 640 F.3d at 470 ("While the primary risk of [assault and battery on a police officer] is to the officer

23

who is occupied with his or her duties to the public, there is also a great risk to the defendant whose interference with the police is likely to provoke a response of decisive force calibrated to end the matter quickly and prevent the assailant from getting control of the officer or his or her weapon or otherwise injuring the officer or bystanders."). Therefore, and because the risk of serious physical injury attendant to battery on a law enforcement officer renders the crime a potential hotbed of melee and violence, it easily qualifies as a violent felony under the ACCA's residual clause.

The Supreme Court's recent decision in *Sykes* confirms our view in this regard. In *Sykes*, the Court held that vehicular flight from a law enforcement officer was a violent felony under the residual clause, in part because "[c]onfrontation with police is the expected result of vehicle flight. It places property and persons at serious risk of injury." 131 S. Ct. at 2274. In other words, vehicular flight fell under the residual clause because it could *potentially* cause a confrontation with police. *See id.* It inheres from that reasoning that battery on a law enforcement officer, which *necessarily* includes some physical confrontation with police, is a violent felony under the residual clause. Put another way, if vehicular fleeing from law enforcement is a violent felony because of its potential risk of physical confrontation, a crime that *a fortiori* involves that very confrontation with police is most assuredly a violent felony, too.

24

*C.  Aggravated Battery*

Having determined that Turner's first two convictions qualify as violent felonies under the ACCA, his final predicate conviction—for aggravated battery—falls neatly into place.  In Florida, a person commits aggravated battery by committing a battery: (1) that intentionally or knowingly causes great bodily harm, permanent disability, or disfigurement; (2) while using a deadly weapon; or (3) upon a victim whom the offender knows to be pregnant.  Fla. Stat. § 784.045.

We need not belabor the point here because Turner's conviction—which stemmed from his stabbing a man in the chest—is indubitably a violent felony under the elements clause.  Using the modified categorical approach, and because the victim of the crime was a male, we can rule out battery upon a pregnant female as the basis for Turner's conviction.  That leaves only two potential bases for Turner's conviction, one of which involves the intentional or knowing causation of great bodily harm, and the other which involves the use of a deadly weapon.  Either way, the crime "has as an element the use, attempted use, or threatened use of physical force," § 924(e)(2)(B)(i), indeed, "*violent* force—that is, force capable of causing physical pain or injury to another person."  *Johnson*, 130 S. Ct. at 1271 (emphasis in original).[7]  We can therefore say without compunction that Turner's

---

[7]     Doubtless, Florida aggravated battery would also qualify as a violent felony under the residual clause.  *See Sykes*, 131 S. Ct. at 2273.  But because Turner's conviction for

conviction for aggravated battery qualifies as a violent felony for purposes of the ACCA.

Ultimately, then, all three of the convictions used by the district court as predicate offenses for Turner's ACCA enhancement—aggravated assault and shooting into an occupied building, battery on a law enforcement officer, and aggravated battery—were properly qualified as violent felonies. We discern no error—*Begay* or otherwise—in Turner's sentence.

### III. Conclusion

In *Gilbert*, we left open the question whether a petitioner could open the portal to § 2241 via the savings clause of § 2255 if he could make a showing of "pure *Begay* error"—that is, a showing that errors in the application of the ACCA's violent felony enhancement "resulted in the defendant being sentenced to a term of imprisonment that exceeded what would have been the statutory maximum without the error." *Gilbert*, 640 F.3d at 1319 n.20. We again leave that question unanswered today. Instead, because Turner has failed to show that he was improperly sentenced under the ACCA in the first instance, we have no occasion to decide whether, had he made such a showing, it would enable him to bring his petition under the savings clause. Perhaps the day will come when a petitioner

---

aggravated battery so obviously qualifies as a violent felony under the elements clause, we need not dwell on that issue to resolve this case.

makes a showing of pure *Begay* error sufficient to render the question left open by

*Gilbert* ripe for decision.  That day, however, is not today.

**AFFIRMED.**

HILL, J., concurring:

I concur because the law of this circuit requires that I must. I write separately to endorse the idea expressed in footnote 3 that § 2255 is "literally" inadequate and ineffective to test the legality of an erroneously imposed ACCA-enhanced sentence in excess of the statutory maximum, thereby opening the portal to habeas relief under § 2241. I disassociate myself, however, from the dicta also expressed in the footnote that guideline enhancements and the guideline sentences for the underlying crimes – like ducks and donkeys – are not the same things, and, therefore, should not be treated the same. Tell this to the petitioner who is literally factually innocent of the sentencing enhancement – that is, he is not, nor has he ever been, guilty of three prior violent felonies. Tell him that the error in the enhancement is beyond our power to fix because it is a duck not a donkey.

Distinguishing between ducks and donkeys is a meaningless exercise when, behind the curtain, both are the government. It is the *government* that unlawfully deprives us of our liberty when it applies an invalid enhancement to a sentence. It is the government that is forbidden to do so by the Constitution.

If our government can incarcerate people for time beyond that provided for by law simply because we call the incarceration a duck instead of a donkey, there is no constitutional guarantee against deprivation of liberty in this country.

28