[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 18-15229

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIEL NATHANIEL MCCALL,
a.k.a. Papa,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:18-cr-00120-GAP-KRS-1

_____

Before JILL PRYOR, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Daniel McCall appeals his conviction for being a felon in possession of a firearm, arguing that his indictment was jurisdictionally defective and that the district court erred in accepting his guilty plea without informing him of each element of his offense. McCall also appeals his fifteen-year sentence, contending that the district court erred in enhancing his sentence under the Armed Career Criminal Act and in calculating his base offense level under the sentencing guidelines. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A federal grand jury indicted McCall for knowingly possessing a firearm and ammunition on November 7, 2017, after having been previously convicted of a crime punishable by longer than one year of imprisonment, in violation of 18 U.S.C. sections 922(g)(1) and 924(e).

At McCall's change of plea hearing, the magistrate judge explained that, to obtain a conviction, the government would need to prove that McCall "knowingly possessed a firearm or ammunition in or affecting interstate or foreign commerce." McCall said that he understood. The magistrate judge then told McCall that he faced a fifteen-year mandatory minimum sentence because he had been convicted at least three times of a "violent felony" or "serious

drug offense." The magistrate judge asked McCall if, on November 7, 2017, he had previously been convicted of a felony, which she explained was a crime for which he could have been incarcerated for a year or more. McCall said that he had and also denied having his rights to own a firearm restored.

The government then set out the factual basis for the plea. The government explained that McCall was involved in a domestic dispute outside of his home. During that dispute, McCall went inside his home and retrieved a firearm. When he got back out, he attempted to fire the gun—and eventually did fire it. Others at the scene wrestled the firearm away from him. When law enforcement arrived, McCall fled but was ultimately apprehended. After this proffer, McCall pleaded guilty.

Prior to sentencing, a probation officer determined that McCall's base offense level was twenty-four under guideline section 2K2.1(a)(2) because McCall possessed a firearm with "at least two felony convictions of either a crime of violence or a controlled substance offense." The probation officer recommended a four-level enhancement under section 2K2.1(b)(6) because McCall had used the firearm in connection with two state felonies for aggravated assault with a firearm. This gave McCall an offense level of twenty-eight.

The probation officer also enhanced McCall's offense level under the Armed Career Criminal Act because he had at least three prior convictions for violent felonies or serious drug offenses committed on different occasions. The probation officer listed four

predicate felonies.  First, a conviction for the "sale of cocaine" on May 13, 1991, in violation of Florida Statutes section 891.13(1)(a)(1), for which McCall was sentenced to thirty months' incarceration.  Second, a conviction for the "sale of cocaine" on May 15, 1991, in violation of Florida Statutes section 891.13(1)(a)(1), for which McCall was sentenced to thirty months' incarceration.  Third, a conviction for aggravated assault on November 29, 1996, in violation of Florida Statutes section 784.021(1)(a), for which McCall was sentenced to 120 months' incarceration.  And fourth, a conviction for unlawful possession with intent to sell or deliver a controlled substance on February 15, 1998, in violation of Florida Statutes section 893.13(1)(a)(1), for which McCall was sentenced to 120 months' incarceration.

Having determined that McCall's criminal history brought him within the scope of the Armed Career Criminal Act, the probation officer then decided which specific enhancement applied. Because McCall had used or possessed a firearm in connection with a crime of violence, the probation officer used section 4B1.4(a)(3)(A), increasing McCall's offense level to thirty-four.  The probation officer also recommended giving McCall a three-level reduction because he pleaded guilty, bringing his final offense level to thirty-one.

As to McCall's criminal history, the probation officer determined, under section 4B1.4(c)(2), that McCall had a criminal history category of VI because he had used or possessed a firearm or

ammunition in connection with a crime of violence or a controlled substance.

With a total offense level of thirty-one and a criminal history category of VI, McCall's guideline range was 188 to 235 months. And, because McCall pleaded guilty to violating 18 U.S.C. sections 922(g)(1) and 924(e), his mandatory minimum was fifteen years and his maximum sentence was life.

McCall objected to the report. As relevant here, McCall objected to the enhancement of his sentence under both section 2K2.1 (for having at least two prior felony convictions for either a "crime of violence" or a "controlled substance offense") and section 4B1.4(b)(3)(A) (for having at least three prior convictions for a "violent felony offense" or a "serious drug offense"). McCall argued that his two 1991 drug convictions did not qualify as "serious drug offenses" because section 893.13(1)(a)(1) was indivisible and so the district court should assume that McCall committed the crime by the least culpable means. In other words, McCall argued that, because one could violate section 893.13(1)(a)(1) by purchasing drugs, and purchasing drugs is not a "serious drug offense," his convictions could not be counted for purposes of the enhancement. McCall acknowledged that we had held that section 893.13 was divisible in *Spaho v. United States Attorney General*, 837 F.3d 1172 (11th Cir. 2016). But he argued that *Spaho* was not binding because it addressed a different version of the statute. And he argued that *Spaho* was wrongly decided.

McCall also contended that none of his three drug convictions qualified as "serious drug offenses" because they could "be committed without the defendant receiving remuneration"—that is, without any compensation. He argued by analogy to the Controlled Substances Act, pointing out that, under that statute, "drug trafficking crimes" required compensation, and therefore "serious drug crimes" under the Armed Career Criminal Act should too.

Finally, McCall argued that the government couldn't show that his two 1991 drug offenses occurred on separate occasions such that they counted as two predicates. McCall argued that the government could use *Shepard* documents only to prove the elements of an offense.[1] But the dates of the crimes were not elements of his offenses. As a result, McCall argued that the government could not establish that the crimes occurred on separate dates and thus on separate occasions.

As to his conviction for aggravated assault, McCall argued that his conviction could not be either a crime of violence or a violent felony. He argued that "[a]n offense cannot qualify as a 'violent felony' or 'crime of violence' if it may be committed with a mens rea of recklessness." In Florida, he argued, an aggravated assault could be committed with a mens rea of "culpable negligence"—akin to recklessness—thus preventing it from qualifying as a violent felony or crime of violence. McCall conceded that we

---

[1] *Shepard v. United States*, 544 U.S. 13 (2005).

had already decided otherwise in *Turner v. Warden, Coleman FCI*, 709 F.3d 1328 (11th Cir. 2013) and *United States v. Golden*, 854 F.3d 1256 (11th Cir. 2017), but contended those cases were wrongly decided.

The government responded that McCall's 1991 drug convictions qualified as serious drug crimes because section 893.13(1)(a)(1) was divisible under *Spaho*. Because the statute was divisible, the government said, the district court could use *Shepard* documents to see that McCall was convicted of *selling* cocaine, not buying it. The government also argued that McCall's compensation argument was meritless because the cases he relied on addressed a different statute, not the Armed Career Criminal Act, which had no compensation requirement. The government then pointed out that our case law allowed reliance on *Shepard* documents to determine whether crimes were committed on different occasions. And, as to McCall's aggravated assault conviction, the government relied on our cases holding that the conviction qualified as both a violent felony and a crime of violence.

The district court overruled McCall's objections and adopted the probation officer's report. It then varied downwards and sentenced McCall to 180 months' incarceration and 60 months' supervised release. McCall timely appealed.

## STANDARD OF REVIEW

We review for plain error the validity of a guilty plea when it was not raised before the district court. *United States v. James*, 210 F.3d 1342, 1342 (11th Cir. 2000).

We review de novo the sufficiency of an indictment. *United States v. Bobo*, 344 F.3d 1076, 1082–83 (11th Cir. 2003).

We review de novo the district court's determination that a prior crime qualifies as a violent felony or serious drug offense, and whether crimes occurred on different occasions from each other. *United States v. Howard*, 742 F.3d 1334, 1341 (11th Cir. 2014); *United States v. Robinson*, 583 F.3d 1292, 1294 (11th Cir. 2009); *United States v. Longoria*, 874 F.3d 1278, 1281 (11th Cir. 2017).

## DISCUSSION

McCall makes five arguments on appeal. First, he argues that his indictment is jurisdictionally defective because it did not allege that he knew he was a convicted felon at the time he possessed the firearm. Second, he contends that his guilty plea should be vacated because the district court violated both his due process rights and Federal Rule of Criminal Procedure 11 by failing to ensure he knew the true nature of the charges against him. Third, McCall asserts that his three drug convictions under section 893.13(1)(a)(1) are not serious drug offenses or controlled substance offenses because (1) the statute is indivisible and could be committed through mere purchase and (2) even if it is divisible, the *Shepard* documents do not prove that McCall received

compensation.   Fourth, McCall maintains that the government failed to prove that his two 1991 drug convictions occurred on different occasions.   And fifth, McCall argues that his aggravated assault conviction is not a violent felony.   We take each in turn.

## A.  Lack of Jurisdiction

McCall argues that his indictment is jurisdictionally defective because it did not allege that he knew his status as a felon, also known as the "knowledge-of-status" element. *Cf. Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019) ("To convict a defendant, the [g]overnment . . . must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status [as a felon] when he possessed it.").

But, as McCall concedes, our precedent forecloses this argument.   In *United States v. Moore*, 954 F.3d 1322 (11th Cir. 2020), the defendants advanced the same argument that McCall has raised here:   that "because their indictments failed to allege their knowledge of their felon status, the indictment failed to allege a crime, depriving the district court of jurisdiction." *Id.* at 1332.   We rejected that argument, holding that "the omission of an element [in an indictment] does not affect jurisdiction." *Id.* at 1333.

Here, McCall's indictment alleged that he knew that he had a firearm, that the firearm had affected interstate commerce, and that McCall had previously been convicted of a felony.   It did not allege that McCall *knew* he was a felon and thus prohibited from possessing a firearm, but we held in *Moore* that the element's absence was not a jurisdictional defect. *Id.*; *see also United States v.*

*Morales*, 987 F.3d 966, 969 (11th Cir. 2021) ("[The defendant] also claims that the district court lacked subject matter jurisdiction over the unlawful possession of a firearm and ammunition charge because his indictment failed to allege that he knew he was a convicted felon. But . . . [we've] held that such an omission is not a jurisdictional defect.").

The district court had subject matter jurisdiction over the felon in possession charge.

### B. Due Process and Rule 11

McCall contends that the district court erred by accepting his guilty plea because doing so violated the due process clause and Federal Rule of Criminal Procedure 11. As to due process, McCall says that his guilty plea was not knowing and voluntary because he wasn't aware that the government needed to prove that he *knew* he was a felon. As to rule 11, McCall similarly argues that, because he was unaware of this element, his plea colloquy failed to establish that he understood the nature of the charges against him.

A guilty plea satisfies due process only if it is "voluntary" and "intelligent." *Bousley v. United States*, 523 U.S. 614, 618 (1998). To voluntarily and intelligently plea, the defendant must have "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Id.* (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "Building upon these [due process] principles, [r]ule 11(b) sets out procedures that district courts must follow when accepting guilty pleas." *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018).

In accepting a guilty plea, for instance, "the court must inform the defendant of . . . the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b).  These procedures are meant to ensure that the defendant is entering into a "knowing and voluntary guilty plea." *Presendieu*, 880 F.3d at 1238.

Because McCall did not make these arguments to the district court, we review them for plain error. *Id.* at 1237 (reviewing for plain error whether a defendant's plea was knowing and voluntary under the due process clause and rule 11).  Plain error occurs where:  (1) there is an error; (2) that is plain; (3) that affects the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Id.*

McCall hasn't satisfied the third prong because he hasn't shown that he would not have pleaded guilty had he known the government had to prove that he *knew* he was a felon.  To meet the substantial rights prong, a defendant must show that there's "a reasonable probability that, but for the error [complained of], the outcome of the proceeding would have been different." *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021) (quotation omitted).  So, in a case like this, McCall "ha[d] the burden of showing that, if the [d]istrict [c]ourt had correctly advised him of the *mens rea* element of the [felon in possession] offense, there is a reasonable probability that he would not have pled guilty." *Id.* (cleaned up).  "[W]here the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb in trying to satisfy the substantial-rights prong." *Id.*

Here, McCall admitted that he knew he was a felon and that he hadn't had his rights to own a firearm restored.  McCall had also been convicted of *four* previous felonies with sentences of five years or longer.  He cannot show a reasonable possibility that he would have contested, had he been aware of the element, whether he knew that he was a felon.  Indeed, as the Supreme Court has explained, "a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon." *Id.*  And so it's unlikely that McCall would have opted for a trial by arguing that, although he *was* a felon, he didn't actually *know* he was a felon.  "Felony status is simply not the kind of thing that one forgets." *Id.* (quotation omitted).

Against this, McCall, citing *United States v. Dominguez Benitez*, 542 U.S. 74 (2004), argues that a guilty plea accepted in violation of due process is a structural error that requires automatic reversal of his guilty plea.  But, in that case, the Supreme Court only commented that when "a criminal conviction obtained by guilty plea contains *no* evidence that a defendant knew of the rights he was putatively waiving, the conviction must be reversed." *Id.* at 84 n.10 (emphasis added).  In saying so, the Supreme Court cited a case where there was *no* plea colloquy at all. *See Boykin v. Alabama*, 395 U.S. 238, 239 (1969) (noting that "the judge asked no questions of petitioner concerning his plea").  In this case, however, there was an extensive colloquy.  And we've applied plain error review where a plea colloquy omitted the knowledge-of-status

element. *United States v. McLellan*, 958 F.3d 1110, 1120 (11th Cir. 2020).

Thus, the district court did not plainly err in accepting McCall's guilty plea without advising him of the knowledge-of-status element.

### C. Serious Drug Offenses

McCall argues that his three drug convictions under section 893.13(1)(a) are not "serious drug offenses" under the Armed Career Criminal Act or "controlled substance offenses" under the sentencing guidelines. McCall is mistaken.

The Armed Career Criminal Act defines a "serious drug offense" as an "offense under [s]tate law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . , for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). The guidelines similarly define a "controlled substance offense" as an "offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

Florida law provides that "a person may not sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance." Fla. Stat. § 893.13(1)(a). We have

previously held that a violation of section 893.13(1)(a) is both a serious drug offense and a controlled substance offense. *See United States v. Smith*, 775 F.3d 1262, 1268 (11th Cir. 2014) ("Section 893.13(1) of the Florida Statutes is both a serious drug offense and a controlled substance offense." (cleaned up)). Accordingly, all three of McCall's prior drug convictions—all under section 893.13(1)(a)—are valid predicates.

Neither of McCall's counterarguments are persuasive. First, McCall argues that section 893.13(1)(a)(1) is indivisible. But we've already concluded that the statute is divisible. *Spaho v. U.S. Att'y Gen.*, 837 F.3d 1172, 1179 (11th Cir. 2016) (holding that section "893.13(1)(a)(1) was divisible"). McCall acknowledges this precedent but argues that *Donawa v. U.S. Attorney General*, 735 F.3d 1275 (11th Cir. 2013) controls. But we rejected this precise argument in *Spaho*, where we explained that *Donawa* "addressed a different and narrower question." *Spaho*, 837 F.3d at 1178. Accordingly, section 893.13(1)(a)(1) is divisible—and McCall doesn't challenge the district court's findings following from this conclusion: that his *Shepard* documents reveal that his 1991 convictions were for selling cocaine (not buying it) and that selling cocaine qualifies as a serious drug offense.

Second, McCall argues that his drug convictions are not serious drug offenses or controlled substance offenses because the state laws he was convicted under did not require him to receive compensation to be convicted. But compensation isn't part of the definition of a serious drug offense or controlled substance offense.

As we've said, a "serious drug offense" involves "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii). A "controlled substance offense" involves "the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). There's nothing in these provisions about compensation.

Guided by the plain language, we've found serious drug offenses and controlled substance offenses even where the state statute doesn't require compensation. *See, e.g.*, *Hollis v. United States*, 958 F.3d 1120, 1123 (11th Cir. 2020) (holding that a conviction for violating an Alabama statute prohibiting "giv[ing] away" controlled substances "categorically qualif[ied] as [a] predicate offense[] under both the [Armed Career Criminal Act] and the career-offender provision of the [g]uidelines"); *United States v. Robinson*, 583 F.3d 1292, 1295 (11th Cir. 2009) (holding that a conviction for violating an Alabama statute prohibiting possession of a controlled substance for "other than personal use" constituted a serious drug offense). Compensation, in short, is irrelevant.

Accordingly, all three of McCall's drug convictions constitute serious drug offenses for purposes of the Armed Career Criminal Act and controlled substance offenses for purposes of the guidelines.

## D. Different Occasions

McCall argues that the government did not meet its burden to prove that his May 13, 1991, and May 15, 1991, convictions occurred on "different occasions." We disagree.[2]

Under the Armed Career Criminal Act, a defendant convicted of a felon in possession charge is subject to a mandatory minimum of fifteen years' imprisonment if he "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). At issue here is the occasions clause.

An "occasion" is "an event, occurrence, happening, or episode." *Wooden v. United States*, 142 S. Ct. 1063, 1069 (2022). The analysis we undertake to assess whether crimes occurred on different occasions is "multi-factored in nature." *Id.* at 1070. The Supreme Court has explained some of the factors courts might consider, including the time, place, and relationship of the crimes:

> Timing of course matters[.] Offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion; not so [for] offenses separated by substantial gaps in time or

---

[2] The Supreme Court decided *Wooden v. United States*, 142 S. Ct. 1063 (2022) while this case was on appeal. McCall didn't argue before the district court or in his initial appellate brief that the *timing* between the two 1991 drug offenses was insufficient to establish that the crimes took place on different occasions. Nonetheless, we gave the parties leave to file supplemental briefs in light of *Wooden*.

significant intervening events. Proximity of location is also important; the further away crimes take place, the less likely they are components of the same criminal event. And the character and relationship of the offenses may make a difference: The more similar or intertwined the conduct giving rise to the offenses— the more, for example, they share a common scheme or purpose—the more apt they are to compose one occasion.

*Id.* at 1071. The Court explained that, "[i]n many cases, a single factor—especially of time or place—can decisively differentiate occasions." *Id.* "Courts, for instance, have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a 'significant distance.'" *Id.*

In this case, the government met its "burden of proving by a preponderance of the evidence that the prior convictions more likely than not arose out of separate and distinct criminal episodes." *United States v. Dudley*, 5 F.4th 1249, 1256 (11th Cir. 2021) (cleaned up). The government presented evidence that McCall sold cocaine to an undercover officer on May 13, 1991, and again on May 15, 1991. These two crimes were charged in separate informations. They were discrete drug transactions that occurred on different days. This indicates that the offenses occurred on different occasions. And McCall didn't present the district court with any evidence to the contrary. Thus, the district court didn't err in finding, by a preponderance of the evidence, that the drug crimes—which

involved two separate transactions that took place days apart—occurred on different occasions.

In response, McCall advances five main arguments—all unpersuasive. First, McCall argues that "the district court's singular focus on the dates of the offenses, when the governing standard now requires a multi-factor consideration, constitutes legal error." But the Supreme Court observed that, "[i]n many cases, a single factor—especially of time or place—can decisively differentiate occasions." *Wooden*, 142 S. Ct. at 1071. And it noted that "[c]ourts, for instance, have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart." *Id.* McCall has not identified any facts that may warrant a different evaluation here.

Second, McCall contends that his two drug offenses were committed on a single occasion because the offenses had "the same character (selling/delivering a controlled substance)," "involve[d] the same participants (the same undercover officer)," and "occurred in the same general location (at or near Daytona Beach)." But McCall's offenses were separate drug transactions that took place days apart. It's entirely consistent with ordinary language to say that *on two occasions* McCall sold controlled substances to the same undercover officer in Daytona Beach. Guided by ordinary language, the district court didn't err in finding two occasions. *Id.* ("[I]n law as in life, it is usually not so difficult to identify an 'occasion': Given that the term in [the Act] has just its ordinary meaning, most cases should involve no extra-ordinary work.").

Third, McCall argues that, because the charging documents said that the drug offenses took place "on or about" May 13, 1991, and May 15, 1991, they alleged only "approximate dates." But charging documents routinely use the language "on or about" to refer to precise dates. In any event, the district court did not err in finding—based on the state having charged McCall in two separate informations for two separate drug transactions that were alleged to occur on dates two days apart—that McCall had committed those offenses on different occasions.

Fourth, McCall argues that the "occasions clause is uncon-stitutionally vague." Not so. "To satisfy due process, a penal stat-ute must define the criminal offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discrim-inatory enforcement." *Skilling v. United States*, 561 U.S. 358, 402–03 (2010) (cleaned up). The occasions clause captures offenses "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). This gives fair notice that qualifying offenses committed on different occasions will lead to a sentencing enhancement. In-deed, the term "occasion" (as used in the Act) "has just its ordinary meaning," so "it is usually not so difficult to identify an 'occasion.'" *Wooden*, 142 S. Ct. at 1071. And the occasions clause does not en-courage arbitrary or discriminatory enforcement because courts must apply *Wooden*'s multi-factor test. *Id.* at 1070–71. The clause is not unconstitutionally vague.

And fifth, McCall argues that the district court violated his Sixth Amendment right to a jury by enhancing his sentence based on the dates of his drug offenses. He says that sentencing courts can rely on *Shepard* documents only to find the *elements* of prior offenses, not the *facts* of those prior offenses—like the offense date. We have rejected this argument many times. *See, e.g.*, *Dudley*, 5 F.4th at 1265 ("[D]istrict courts may rely on non-elemental facts contained in *Shepard*-approved documents when deciding whether a defendant's predicate offenses were committed on occasions different from one another. . . . Any holding to the contrary would effectively render a sentencing judge incapable of making the . . . different-occasions determination as the elemental facts rarely ever involve the date, time, or location of crimes."); *Longoria*, 874 F.3d at 1283 ("[The defendant] argues that the [d]istrict [c]ourt should not have looked at 'non-elemental facts,' the dates of his prior convictions, in *Shepard*-approved documents when deciding whether his predicate offenses were committed on different occasions. This argument is directly foreclosed by our precedent.").

The district court did not err in finding that McCall's drug offenses occurred on different occasions.

### E.  Aggravated Assault

McCall's final contention is that his aggravated assault conviction is not a violent felony under the Armed Career Criminal Act or a crime of violence under the guidelines. We've already concluded that McCall's three drug crimes qualify as predicates

under the Act and under the guidelines.  That (by itself) is enough to affirm.  But we also agree with the district court's conclusion that McCall's aggravated assault conviction is a fourth predicate.

McCall concedes that we've held that aggravated assault under Florida law qualifies as a violent felony and a crime of violence. *See Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1338 (11th Cir. 2013) (holding that a "conviction for aggravated assault" under Florida law "qualifies as a violent felony for purposes of the [Armed Career Criminal Act]"); *United States v. Golden*, 854 F.3d 1256 (11th Cir. 2017) (holding that "a Florida conviction for aggravated assault . . . constitutes a 'crime of violence' under [section] 2K2.1(a)(2)").  And so McCall's contention—that his aggravated assault conviction is not a violent felony or crime of violence—is foreclosed by binding precedent.

Pushing back, McCall argues that Florida's aggravated assault statute cannot qualify as a violent felony or crime of violence because an aggravated assault conviction "can be obtained where the defendant merely was reckless."  The Supreme Court has held that "[o]ffenses with a *mens rea* of recklessness do not qualify as violent felonies under" the Armed Career Criminal Act. *Borden v. United States*, 141 S. Ct. 1817, 1834 (2021) (plurality op.).  In other words, the Act "sets out a *mens rea* requirement—of purposeful or knowing conduct." *Id.* at 1828.  Only prior convictions for purposeful or knowing conduct can qualify as predicates. *Id.*  In McCall's view, Florida's aggravated assault statute punishes

reckless conduct and thus falls short of this purpose or knowledge requirement.

But McCall is wrong. We recently certified this question to the Florida Supreme Court, asking whether Florida's aggravated assault statute "require[s] specific intent." *See Somers v. United States*, 15 F.4th 1049, 1056 (11th Cir. 2021). The Florida Supreme Court held that it does, explaining that aggravated assault "requires at least knowing conduct" and "cannot be accomplished via a reckless act." *Somers v. United States*, --- So. 3d ---, 2022 WL 16984702, at *3 (Fla. Nov. 17, 2022). Because a Florida aggravated assault conviction requires purposeful or knowing conduct, McCall's conviction satisfies *Borden* and qualifies as a predicate.[3]

In sum, the Armed Career Criminal Act requires three prior convictions for violent felonies or serious drug offenses. *See* 18 U.S.C. § 924(e). And guideline section 2K2.1 requires two prior convictions for crimes of violence or controlled substance offenses. *See* U.S.S.G. § 2K2.1(a)(2). McCall had four. As a result, we find no error in the district court's sentencing enhancement.

**AFFIRMED**.

---

[3] McCall moved to stay this appeal pending *Somers*. Because the Florida Supreme Court issued its opinion in *Somers*, his motion is **DENIED**.