IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-13528-J, 16-13804-J, &
16-13857-J
_____

IN RE: LARRY LEONARD,

Petitioner.

_____

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255(h)

_____

Before: MARCUS, MARTIN, and JORDAN, Circuit Judges

B Y   T H E   P A N E L:

Pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A), Larry Leonard has filed an application seeking an order authorizing the district court to consider a second or successive motion to vacate, set aside, or correct his federal sentence, 28 U.S.C. § 2255.  Such authorization may be granted only if this Court certifies that the second or successive motion contains a claim involving:

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).  "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the

application satisfies the requirements of this subsection." *Id.* § 2244(b)(3)(C); *see also Jordan v. Sec'y, Dep't of Corrs.*, 485 F.3d 1351, 1357-58 (11th Cir. 2007) (explaining that this Court's determination that an applicant has made a *prima facie* showing that the statutory criteria have been met is simply a threshold determination).

Leonard was convicted, in 2008, of possession of a firearm by a convicted felon, and was sentenced as an armed career criminal, pursuant to the ACCA. At sentencing, Leonard asserted that the government appeared to rely on four prior convictions in support of the ACCA enhancement, and argued that his two convictions for Florida burglary and two convictions for possession with intent to sell cocaine were not ACCA predicate felonies. The district court determined that Leonard's convictions for burglary and possession with intent to sell cocaine were ACCA predicate felonies, but did not indicate which enhancement clause applied to those convictions. Leonard's Presentence Investigation Report ("PSI") also reflects a conviction for aggravated assault on a police officer.

In his present application, Leonard indicates that he wishes to raise one claim in a second or successive § 2255 motion. He asserts that his claim relies upon a new rule of constitutional law. He contends that he is being held unlawfully because the district court enhanced his sentence based on an improper application of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Leonard relies upon *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015)—in which the Supreme Court held that the residual clause of the ACCA is unconstitutionally vague—as providing the new rule of constitutional law supporting his claims. Specifically, he argues that the district court relied on four prior convictions when it enhanced his

2

sentence under the ACCA, two of which qualified as predicate offenses because they were crimes of violence under the now defunct residual clause.

Earlier this year, Leonard filed a nearly identical successive application, which we denied. *See In re Leonard* (11th Cir. May 24, 2016) (unpublished).   In doing so, we determined that: (1) Leonard was correct in asserting that the district court relied on the residual clause in determining that he was an armed career criminal, because it had relied on his two prior Florida burglary convictions as ACCA predicate offenses; but (2) he nonetheless still qualified for an enhanced sentence based on his prior conviction for aggravated assault, which we have held is an ACCA-predicate offense under that statute's elements clause. *Id.*  We noted that Leonard's aggravated assault conviction, combined with his two prior serious drug offense convictions supported his sentence under the ACCA, and denied his application. *Id.*

The ACCA defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

(i)     has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii)    is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).  The first prong of this definition is sometimes referred to as the "elements clause," while the second prong contains the "enumerated crimes" and, finally, what is commonly called the "residual clause." *United States v. Owens*, 672 F.3d 966, 968 (11th Cir. 2012).

On June 26, 2015, the Supreme Court in *Johnson* held that the residual clause of the ACCA is unconstitutionally vague because it creates uncertainty about how to evaluate the risks posed by

3

a crime and how much risk it takes to qualify as a violent felony. *Johnson*, 576 U.S. at ___, 135 S. Ct. at 2557-58, 2563. The Supreme Court clarified that, in holding that the residual clause is void, it did not call into question the application of the elements clause and the enumerated crimes of the ACCA's definition of a violent felony. *Id.* at ___, 135 S. Ct. at 2563.

On April 18, 2016, the Supreme Court held in *Welch v. United States*, 578 U.S. ___, 136 S. Ct. 1257, ___ L. Ed. 2d ___ (2016), that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review. *Welch*, 578 U.S. at ___, 136 S. Ct. at 1264-65. The Court explained that, by striking down the ACCA's residual clause as void for vagueness, *Johnson* changed the ACCA's substantive reach and altered "the range of conduct or the class of persons that the [Act] punishes." *Id.* at ___, 136 S. Ct. at 1265 (brackets in original) (citation omitted). Applying the retroactivity framework set forth in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), and its progeny, the Court further stated that *Johnson* was not a procedural decision because it "had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the [ACCA]." *Id.* Accordingly, the Court ruled that "*Johnson* is thus a substantive decision and so has retroactive effect under *Teague* in cases on collateral review." *Id.*

In light of the Supreme Court's holdings in *Johnson* and *Welch*, federal prisoners who can make a *prima facie* showing that they previously were sentenced, at least in part, in reliance on the ACCA's now-voided residual clause are entitled to file a second or successive § 2255 motion in the district court. *See In re Robinson*, No. 16-11304, manuscript op. at 2 (11th Cir. Apr. 19, 2016) (holding that *In re Franks*, 815 F.3d 1281 (11th Cir. 2016), which had held that *Johnson* claims brought by ACCA offenders cannot satisfy the statutory requirements of § 2255(h)(2), is no

4

longer good law). However, merely alleging a basis that meets § 2255(h)'s requirements in the abstract only "represent[s] the minimum showing" necessary to file a successive § 2255 motion because, under § 2244(b)(3)(C), the applicant also must make "a *prima facie* showing that the application satisfies the requirements of this subsection." *In re Holladay*, 331 F.3d 1169, 1173 (11th Cir. 2003) (granting a state death-row inmate's successive application because he had proffered detailed evidence, in satisfaction of § 2244(b)(3)(C), that showed "a reasonable likelihood that [he] is mentally retarded" to support his proposed *Atkins* claim). Accordingly, it appears that it is not enough for a federal prisoner to simply identify *Johnson* as the basis for the claim or claims he seeks to raise in a second or successive § 2255 motion, but also must show that he falls within the scope of the new substantive rule announced in *Johnson*. *See, e.g., id.*; 28 U.S.C. § 2244(b)(3)(C).

We recently granted an application for leave to file a second or successive motion to vacate where both the record and the state of the law at the time of the applicant's sentencing suggested that his sentence may have been enhanced under the residual clause. *In re Adams*, No. 16-12519, manuscript op. at 5-8 (11th Cir. June 15, 2016)). In a case decided on the same day as *Adams*, we denied an application where binding precedent directed that the applicant's relevant predicate offenses fell within the ACCA's elements clause. *In re Hires*, No. 16-12744, manuscript op. at 7-9 (11th Cir. June 15, 2016). Thereafter, we relied on *Adams* and *Hires* to clarify the standard that applicants seeking relief under *Johnson* must meet in order to make the requisite *prima facie* showing. In what we described as the "clear-unclear test," we stated that:

> We may only deny the application if it is clear that the motion will not contain a *Johnson* claim. This is so when:
>
> (1) the sentencing court record demonstrates that the sentencing court specifically

5

identified three prior convictions as qualifying as ACCA predicates under the elements or enumerated crimes clauses, or based on the "serious drug offense" provision of the ACCA; and/or

(2) under binding precedent, it is clear that the prior convictions the sentencing court identified categorically qualify as ACCA predicates under the elements or enumerated crimes clauses or, alternatively, the ACCA's "serious drug offense" provision.

*In re Rogers*, No. 16-12626, manuscript op. at 3-4 (11th Cir. June 17, 2016).   In further detailing this standard, we enunciated that the "binding precedent" that we may rely on is the "current" and "on-point" binding precedent.   *Id*. at 5-7.

We explained that, if an applicant's claim "implicates" *Johnson*, meaning that the application does not fall within either of the given categories, courts "must" apply *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), and other binding Supreme Court precedent to determine whether a prior conviction would still support an ACCA-enhanced sentence.   *Id*. at 4-5.   We acknowledged that the *Descamps* divisibility analysis is "unsettled" as to many statutes, and, thus, directed that, if it is still unclear from binding precedent that the state law at issue is divisible under *Descamps*, then the applicant has made a *prima facie* showing that his application contains a *Johnson* claim.   *Id*.   We then reiterated that applications should be granted "in situations where neither the record nor current binding precedent makes undeniably clear that, absent the residual clause, an enhanced sentence validly was entered."   *Id*. at 5.   We emphasized that the circumstances in which it will deny applications are "limited" due to the "gatekeeping" function mandated at this stage of review.   *Id*. at 7.   Utilizing the "clear-unclear test," we held that Rogers's prior Florida convictions for aggravated assault and aggravated battery "categorically qualifie[d]" as violent felonies under the elements clause, citing *Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1338, 1341 (11th Cir. 2013), *abrogated on other grounds*

6

by *Johnson*, 576 U.S. __, 135 S. Ct. 2551. *Id.* at 8-9. We concluded that, "because binding precedent clearly classifies as elements clause offenses the convictions Mr. Rogers's sentencing court relied upon as ACCA predicates, his application does not make out a *prima facie* case under *Johnson*." *Id.* at 9.

Here, Leonard does not fit into either of the two categories, as described in *Rogers*, which would lead to the denial of his *Johnson*-based successive application. *See Rogers*, manuscript op. at 3-4. First, the record shows that the district court relied on Leonard's two Florida burglary convictions and two convictions for possession with intent to distribute cocaine in determining that he qualified for an ACCA-enhanced sentence. While *Johnson* does not impact the use of his prior drug convictions, it is unclear from the record which clause of the ACCA the district court employed when it concluded that Leonard's Florida burglary convictions qualified as predicate offenses. Indeed, prior to Leonard's conviction and sentence, the Supreme Court had held that a conviction for Florida burglary was an ACCA-predicate offense under the residual clause. *James v. United States,* 550 U.S. 192, 212, 127 S. Ct. 1586, 1599, 167 L. Ed. 2d 532 (2007), *overruled on other grounds, Johnson*, 576 U.S. at ___, 135 S. Ct. at 2557-58. Thus, it is possible that the district court relied on the now-defunct residual clause in enhancing Leonard's sentence. Accordingly, the record does not demonstrate "that the sentencing court specifically identified three prior convictions as qualifying as ACCA predicates under the elements or enumerated crimes clauses." *Rogers*, manuscript op. at 3.

Second, it is not clear, under binding precedent, that the burglary convictions the district court identified and relied on categorically qualify as ACCA predicates under the elements or enumerated crimes clauses. *Id.* at 3-4. As previously noted, at the time Leonard was sentenced,

7

a conviction under Florida's burglary statute was deemed an ACCA predicate offense under the residual clause, and further, as to the elements clause, the statute contains no element of "attempted use, or threatened use of physical force against the person of another." *See James*, 550 U.S. at 212, 127 S. Ct. at 1599; 18 U.S.C. § 924(e)(2)(B)(i).[1]  Moreover, to qualify as an enumerated crime, "the least of the acts criminalized" under the statute must be "encompassed by the generic federal offense" of burglary. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013). However, in *James*, the Supreme Court noted that Florida's burglary statute went beyond the generic the generic federal definition of burglary. *James*, 550 U.S. at 212, 127 S. Ct. at 1599. In *United States v. Matthews*, 466 F.3d 1271, 1275 (11th Cir. 2006), we agreed that Florida burglary was broader than generic burglary. And recently, in *Adams*, we stated that the statute "does not appear to be divisible such that it still could be violated in a way that comports with the generic definition of burglary." *Adams*, manuscript op. at 6-7. Specifically, we noted that Florida's statute does not set out the "critical place-of-entry element in the alternative—*i.e.*, 'a building *or* its curtilage'—the place-of-entry element encompasses a 'building of any kind, either temporary or permanent, which has a roof over it, *together* with the curtilage thereof.'" *Id.* (quoting Fla. Stat. § 810.011(a)(1)). Accordingly, neither the record nor current binding precedent makes undeniably clear that, absent the residual clause, an enhanced sentence validly was entered, as Leonard would only have two ACCA-predicate offenses, absent the district court's reliance on his two Florida burglary convictions. *See Rogers*, manuscript op. at 5. As such, it appears that Leonard's sentence may have been enhanced under the residual clause.

---

[1] In Florida, "burglary" means "entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." Fla. Stat. § 810.02.

8

While we previously denied Leonard's successive application that raised nearly identical argument as made presently, that decision relied on Leonard's surplus felony conviction for Florida aggravated assault, and under the clear/unclear *Rogers* test, a successive application should be denied only where it is clear that the three ACCA-predicate offenses the district identified and relied upon should be considered. *Id.* at 3-4. Here, based on the records available, the district court did not rely on or make findings as to Leonard's prior aggravated assault conviction. Thus, pursuant to the clear/unclear test announced in *Rogers*, Leonard has made a *prima facie* showing that he may benefit from the rule announced in *Johnson*.

Finally, it is important to note that our threshold determination that an applicant has made a *prima facie* showing that he has met the statutory criteria of § 2255(h), thus warranting our authorization to file a second or successive § 2255 motion, does not conclusively resolve that issue. *See Jordan*, 485 F.3d at 1357 (involving the functionally equivalent § 2244(b)(2) successive application standard applicable to state prisoners). In *Jordan*, we emphasized that, once the prisoner files his authorized § 2255 motion in the district court, "the district court not only can, but must, determine for itself whether those requirements are met." *Id.* Notably, the statutory language of § 2244, which is cross referenced in § 2255(h), expressly provides that "[a] district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." *Id.* (quoting 28 U.S.C. § 2244(b)(4)). We rejected the assertion that the district court owes "some deference to a court of appeals' prima facie finding that the requirements have been met." *Id.* at 1357. We explained that, after the district court looks at the § 2255(h) requirements *de novo*, "[o]ur first hard look at whether the § [2255(h)] requirements

9

actually have been met will come, if at all, on appeal from the district court's decision . . . ." *Id.* at 1358; *see also In re Moss*, 703 F.3d 1301, 1303 (11th Cir. 2013) (reiterating that our threshold conclusion in granting a successive application that a *prima facie* showing has been made is necessarily a "limited determination," as the district court then must also decide "fresh" the issue of whether § 2255(h)'s criteria are met, and, if so, proceed to considering the merits of the § 2255 motion).

Accordingly, Leonard has made a *prima facie* showing that he has raised a claim that meets the statutory criteria. His application for leave to file a second or successive motion is hereby GRANTED.

MARTIN, Circuit Judge, concurring:

The Armed Career Criminal Act (ACCA) was designed to punish repeat offenders who have guns. Generally, a person who was earlier in his life convicted of a felony, and is then found with a gun, has committed a federal crime. ACCA was meant to sort out all those who commit this crime of being a felon in possession, in an effort to punish more serious offenders more harshly. Specifically, ACCA set up a scheme in which people with guns who already had one or two serious felony convictions can receive a sentence of up to ten years, but no more than ten years. However, for a felon who had three or more serious felony convictions (that fit a definition given in the statute); the floor for his sentence is fifteen years. Again, with one or two prior convictions, your sentence could not be more than ten years, but with three or more, your ACCA sentence could not be less than fifteen.

With so much at stake, federal judges across the country have, since the passage of ACCA, been daily called upon to decide whether a particular prior conviction on a man's record (usually it is a man) is the type that triggers the *minimum* sentence of fifteen years rather than a sentence that can be *no longer than* ten. The statute said (in a lot more detail, and using a lot more words) that if the prior conviction was for a "violent felony" then it counts. For all of these years, different judges have been coming to different conclusions about what, exactly, is a "violent felony." The standard by which federal judges were asked to decide what

11

prior felonies count as "violent" became a real concern for Justice Scalia, in particular, and he tried for years to get his court to rule that one of the definitions of "violent felony" in ACCA was void for vagueness. After waging this battle for nearly ten years, in one of his final opinions for the Court, Justice Scalia finally convinced a majority of his colleagues. In Johnson v. United States, 576 U.S. __, 135 S. Ct. 2551 (2015), the Supreme Court struck down ACCA's so-called "residual clause" (which gave one definition of what is a "violent felony") as unconstitutionally vague.

Based on the Johnson decision, federal judges now know that we cannot, in the future, give people harsher sentences based on the voided part of ACCA. The question then became, what happens to all the people who had been sentenced under this provision in the past? There are thousands of people already serving sentences arrived at by application of this language which we now know was no good. If a person was sentenced based on three prior convictions, but after the ruling in Johnson we know that person has only two such convictions, then that person is incarcerated for a period longer than Congress authorized. Beyond that, there is most often a lot more at stake than just the difference between ten and fifteen years. Although ACCA requires a mandatory minimum 15 years, many ACCA sentences are quite a bit longer than that. For example, this court heard last month from a prisoner named Ira Simmons who was convicted 27 years ago of being a felon in

12

possession of a gun.    The maximum possible sentence for that conviction is

normally 10 years.    But because Mr. Simmons had three prior Florida convictions

(for burglary, robbery, and assault), the judge used ACCA to impose a 50-year

sentence.    Without ACCA, Mr. Simmons's mandatory sentencing range would

have been 18 to 24 months.[1]

Generally, prisoners suffering under a sentence that we later learn is illegal

can get relief through what is called a § 2255 motion.    However, the Antiterrorism

and Effective Death Penalty Act of 1996 (AEDPA) narrowed that path to relief.

The path is now narrow indeed.    Under AEDPA, any inmate sentenced in federal

court has one year from the date his direct appeal is final to file a § 2255 motion

attacking his sentence.    After an inmate has filed one § 2255 motion in the district

court where he was sentenced, AEDPA says he can't file another motion (what the

statute refers to as a "second or successive" motion) unless he first asks permission

from the court of appeals.    Most ACCA prisoners already filed a § 2255 motion

years ago, so the only way for them to get relief based on the Johnson decision is to

come to a court of appeals and ask for permission to file another § 2255 motion in

district court.    Judges on this nation's courts of appeals have now witnessed a flood

of applications coming from inmates who believe that Johnson may mean their

sentence is no longer valid.    Remember, any one of these applications might be

---

[1] These details are set out in Simmons v. United States, No. 1:16-cv-22369 (S.D. Fla. July 7, 2016) (order appointing counsel and setting expedited briefing).

filed by a person whose sentence should, by law, be capped at ten years, but has been sentenced to multiples of the decade Congress authorized. The panel here addresses Larry Leonard's third attempt to get our permission to seek relief for his sentence. We turned down his first and second tries.

When courts of appeals get these applications, what the statute directs us to do is "certif[y]" whether the applicant made "a prima facie showing" that his § 2255 motion will "contain . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. §§ 2244(b)(3)(C), 2255(h). Yet in reviewing those applications we have been doing more than what the statute directs. The judges of this court, myself included, have been combing through sealed records from the prisoner's original sentence hearing to speculate about whether the prisoner would win if we let him file in district court. After observing this process, I wrote last month that I'd become "wary of deciding whether to grant leave to file a second or successive § 2255 petition based on a conclusion that the applicant's proposed claim will fail on the merits." In re Saint Fleur, __ F.3d __, 2016 WL 3190539, at *4 (11th Cir. June 8, 2016) (Martin, J., concurring). In another case I observed that "in the two months since Welch v. United States, __ U.S. __, 136 S. Ct. 1257 (2016), . . . our court has denied hundreds of applications to file § 2255 motions based on Johnson by scrutinizing whether the applicant's proposed (in other words, *not yet filed*) motion will prevail

14

on the merits." In re McCall, __ F.3d __, 2016 WL 3382006, at *2 (11th Cir. June 17, 2016) (Martin, J., concurring). "[A]ll these decisions were made without briefing or argument from a lawyer, within a tight 30-day deadline." Id. Most concerning of all is that none of these cases can be appealed. See 28 U.S.C. § 2244(b)(3)(E).

We have now entered a new phase of this harmful endeavor. AEDPA sets a one-year limit on the time during which a prisoner may seek relief from a new Supreme Court ruling like that in Johnson. See 28 U.S.C. § 2255(f)(3). Johnson was decided on June 26, 2015, so the year the statute allows inmates to seek relief based on that ruling has passed. But now it is coming to light that some prisoners who made timely applications to seek relief in district court were mistakenly turned away by ours. Mr. Leonard appears to be one of those inmates. This court has decided approximately a thousand applications for permission to file a § 2255 motion based on Johnson in the three months since the Supreme Court told us in Welch that we should not only honor the ruling in Johnson for sentences in the future, but must also apply the rule for prisoners already serving sentences imposed in the past. Our method of handling these cases has resulted in the denial of hundreds of § 2255 motions "before they were ever filed, without input from a lawyer. If even a single one of those orders was mistaken, then a prisoner has

15

been doomed to serve an unlawful prison sentence." McCall, 2016 WL 3382006, at *2 (Martin, J., concurring).

## I.

Although I am sure he would have preferred otherwise, Mr. Leonard's experience in trying to get permission to file a successive § 2255 motion shows the difficult path prisoners have faced – even when they appear to have meritorious claims.   Mr. Leonard first filed a pro se application this past February.   At the time, we were in the minority of courts that said the Johnson ruling did not apply to prisoners who already filed one § 2255 motion.   However, just before Mr. Leonard filed his application, the Supreme Court agreed to hear the Welch case, which Mr. Leonard suspected would allow him to benefit from Johnson.   Because he expected Welch might help him, he asked us to temporarily stay his application until the Supreme Court decided Welch.[2]   We denied his request, explaining that the "certiorari grant in Welch does not necessarily suggest that [the Supreme Court] will hold that Johnson is retroactive."   In re Leonard, No. 16-10893 (11th Cir. Mar. 30, 2016) (unpublished).   That same day, the Supreme Court heard

---

[2] A month before Mr. Leonard made this request, a panel of this court held that we could stay Johnson applications "until the Supreme Court decides Welch."   In re Johnson, 810 F.3d 1247, 1253 (11th Cir. 2016).   While Mr. Leonard's application was pending, the full Eleventh Circuit vacated the panel opinion that allowed the stay.   See In re Johnson, 815 F.3d 733 (11th Cir. 2016).   The same week, the full court also voted not to vacate the opinion that Welch later abrogated.   See In re Rivero, No. 15-13089 (Mar. 16, 2016).

16

argument in Welch.   Nineteen days later, the Welch decision abrogated our court's precedent, just as Mr. Leonard predicted.

Within a week of the Welch decision, Mr. Leonard filed another pro se application.   We denied that one too.   This time, the panel acknowledged that Mr. Leonard's sentence was based on "convictions [that] no longer meet ACCA's definition of 'violent felony,' which means they are not a valid basis for an ACCA sentence."   In re Leonard, No. 16-11925 (11th Cir. May 24, 2016) (Martin, J, dissenting) (unpublished).   But the panel denied Mr. Leonard's application anyway, saying that even if Johnson knocked out one of the prior convictions that qualified Mr. Leonard for his ACCA sentence, there was another to take its place. The panel did this, as all of us have done in so many of these cases, by looking back at a sealed document that was prepared for Mr. Leonard's 2009 sentencing. That document said Mr. Leonard had an assault conviction from when he was 17 years old, which would have been 14 years before he stood for his ACCA sentencing.   The panel ruled that this decades-old assault conviction barred Mr. Leonard from filing a § 2255 motion "[e]ven though no judge ever used this assault conviction to sentence Mr. Leonard."   Id.   A few weeks later, another panel of this court clarified that we can't use prior convictions to uphold an ACCA sentence unless "the sentencing court specifically identified [those convictions] as qualifying as ACCA predicates."   In re Rogers, No. 16-12626, 2016 WL

17

3362057, at *1 (11th Cir. June 17, 2016).    The Rogers decision articulated why our order on Mr. Leonard's second application was wrong.    Mr. Leonard then filed another pro se application, which is the one we grant today.

## II.

The mistake made in Mr. Leonard's case was not necessary.    As I've said, what Congress authorized courts of appeal to do in ruling on an inmate's application to file a successive § 2255 motion is "certif[y]" if the applicant made "a prima facie showing" that his motion will "contain . . . a new rule of constitutional law, made retroactive to cases on collateral review."    28 U.S.C. §§ 2244(b)(3)(C), 2255(h).    I have no doubt Mr. Leonard's motion, now that he can file it, will "contain" a rule of that kind and, his case shows how easy it is to make mistakes when we try to decide anything beyond the simple question posed by §2255(h).    These cases typically come to us as "nothing more than a form filled out by a prisoner."    McCall, 2016 WL 3382006, at *2 (Martin, J., concurring).    Because we have so little to go on, "our court has been calling up each prisoner's record" to decide, as though we ourselves are resentencing that prisoner, if his earlier convictions still qualify him for the 15-year mandatory minimum sentence based on the parts of ACCA that Johnson left intact.    Id. We've now done this in hundreds of cases.

A court of appeals is simply not equipped to construct a new basis for a prisoner's old sentence in this way.    There are many reasons for this.    First, the statute expects us to decide these applications in 30 days.    See 28 U.S.C. § 2244(b)(3)(D).    Then, there is the matter of what information we can see and understand during the short time we have to assess each prisoner's application. When a district court judge is called on to sentence someone in the first instance, the judge, the person to be sentenced, and the government all get what is called a presentence investigation report (PSI).[3]    This document is prepared by the probation office and identifies anything that may impact the sentence to be imposed.    At the district court sentence hearing, unlike the pure paper review we are doing here, defense lawyers can point out factual errors in the PSI and otherwise educate the court about why the recommendations in the PSI might not be appropriate.    The government can advocate its view as well.

None of that process happens when prisoners like Mr. Leonard apply to our court for permission to go to the district court to have their sentences reexamined. Prisoners filing applications in our court are confined to a short application form.[4]

---

[3] The sealed document from Mr. Leonard's sentencing that showed the assault conviction from when he was 17 was his PSI.

[4] This form, which can be seen at http://goo.gl/auE5HQ, gives prisoners exactly two lines to "[s]tate concisely every ground on which you now claim that you are being held unlawfully."    The form also warns: "All questions must be answered concisely in the proper space."    And it says: "Do not submit separate petitions, motions, briefs, arguments, etc."

This form does not allow applicants to recreate for us what facts were ultimately found by the sentencing judge, or what legal decisions the judge made. Neither can the prisoner educate us about any legal decision the sentencing judge made which might no longer be correct in light of interpretations of the law announced by the Supreme Court in the meantime. This means we are ill-equipped, not fully informed, and rushed in deciding these cases. We therefore make mistakes.

There are many ways a PSI can mislead us. Again, using Mr. Leonard as an example, his PSI listed that he committed an assault at age 17, but it made no reference to the actual statute under which he was convicted. That means we have to guess about the basis for Mr. Leonard's conviction. With no access to the state court records for the past conviction we might guess wrong. In the same way, a PSI might not give the particulars of the terms of a prisoner's plea in state court. Without that information, we can't know from the PSI whether a prisoner who long ago pleaded guilty to a state crime is actually now eligible for an ACCA sentence based on that crime. For example, the Florida Supreme Court recently ruled that Florida law doesn't treat a plea of guilty "with adjudication withheld" as a conviction, which means a plea like that can't be an ACCA predicate. See United States v. Clarke, __ F.3d __, 2016 WL 2754018, at *1 (11th Cir. May 11, 2016). Since the Florida Supreme Court clarified this point only this year, the federal judge who sentenced Mr. Clarke years ago and saw this "adjudication

withheld" in the PSI could not have known whether to count that event as a prior criminal conviction for Mr. Clarke when the judge imposed sentence.

The PSI can mislead us even in cases where the prisoner did not object to its contents at the time he was sentenced.    On the date he was sentenced, Mr. Leonard had three convictions that supported an ACCA sentence.    Though Johnson has since taught us that some of those convictions should not have been counted, Mr. Leonard arrived at his sentence hearing understanding that under existing law he qualified for an ACCA sentence based on those three convictions. Mr. Leonard therefore had no motivation to ask the judge to fix any mistakes in his PSI, since he was due to get an ACCA sentence even if the mistakes were corrected.    Mr. Leonard may even have had an incentive to *not* ask the judge to correct those mistakes.    As the Supreme Court has explained, a defendant in Mr. Leonard's shoes "may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations" that don't affect his sentence.    Descamps v. United States, 570 U.S. __, 133 S. Ct. 2276, 2289 (2013).    So he "may have let [an error] go by because it was irrelevant to the proceedings.    He likely was not thinking about the possibility that his silence could come back to haunt him," when a court of appeals years later tried to construct a new basis for his incarceration from "superfluous factual allegations" in the old PSI.    Id.[5]

---

[5] Though our precedent lets courts apply sentencing statutes based on unobjected-to facts

21

Beyond these mistakes about facts, there are other types of mistakes we can make in these cases.    We now know that Mr. Leonard's sentence was based on his earlier convictions that no longer meet ACCA's "violent felony" definition.    I recognize that for Mr. Leonard and other applicants like him, their criminal history may include other convictions that qualify as violent felonies as that term is defined under current law.    Whether those crimes meet the ACCA definition is a difficult question that requires close analysis of state law.    Even when our court has precedent analyzing a particular state crime, evolution of state court interpretations of a state criminal statute means that a crime might count "if it was committed one year but not if it was committed the next."    Saint Fleur, 2016 WL 3190539, at *5 (Martin, J., concurring).[6]

At a sentence hearing, a judge has help from lawyers, so she can know exactly the criminal history of the person she is sentencing.    Lawyers can debate

_____

in a PSI, Descamps may have abrogated that rule.    See United States v. Howard, 742 F.3d 1334, 1349 & n.10 (11th Cir. 2014).

[6] For example, Mr. Leonard's PSI shows that he had a Florida assault conviction.    Our court has precedent that says that Florida assault "will always" meet one of the ACCA definitions that survived Johnson.    Turner v. Warden Coleman FCI (Medium), 709 F.3d 1328, 1338 (11th Cir. 2013).    However, this court's more recent precedent tells a more complex story. See In re Jackson, __ F.3d __, __, 2016 WL 3457659, at *2 (11th Cir. June 24, 2016).    In Mr. Jackson's case, he was convicted of assault in Florida before that state had passed a statute defining assault, and it turns out that his conviction for common law assault could have been based on acts which don't meet any remaining ACCA definition of a "violent felony."    For that reason, we granted Mr. Jackson's application to a file a successive § 2255 motion.    Mr. Leonard's case may be different from Mr. Jackson's or from Mr. Turner's for that matter.    I do not know what category Mr. Leonard's assault conviction will ultimately fall into.

22

whether "the elements of the statute of conviction, not [] the facts of each defendant's conduct," required what an ACCA definition requires.  Taylor v. United States, 495 U.S. 575, 601, 110 S. Ct. 2143, 2159 (1990).   That process can't happen here when we decide these cases "without argument from a lawyer, within a tight 30-day deadline and in a deluge of hundreds of applications." McCall, 2016 WL 3382006, at *2 (Martin, J., concurring).   So we are vulnerable to applying the wrong law.   For example, we might overlook that legal rules applied at the time of the sentencing are now known to be wrong.   If a decade ago, a man got a longer sentence based on an interpretation of a statute that the Supreme Court has since told us was wrong, then he is entitled to have the correct law applied if he is resentenced now.   But our court has over and over again failed to apply the Supreme Court's current interpretation of ACCA when ruling on the applications from prisoners seeking to file a successive § 2255 motion so they can benefit from Johnson.[7]   I think this is wrong, and at the least, district courts

---

[7] This idea can be illustrated by this court's treatment of the Supreme Court's 2013 ruling in Descamps, which explained the proper method for evaluating a person's prior convictions.   This is, of course, the question that comes up for people whose sentences violated Johnson.   But in rushing to rule on so many of these cases in such a short period, this court has been erratic about whether and when Descamps applies in this context.   The court's first published opinion on this issue held that Descamps did not apply to a Johnson claim because the sentencing judge had cited the Taylor case when imposing sentence.   See In re Thomas, __ F.3d __, 2016 WL 3000325, at *2 (11th Cir. May 25, 2016).   Weeks later another panel held that Descamps does apply when we can't tell which ACCA definition the sentencing judge had in mind (the "enumerated crimes clause" and "residual clause" are just two halves of one statutory subsection, so judges weren't precise about this).   See In re Adams, __ F.3d __, 2016 WL 3269704, at *3 (11th Cir. June 15, 2016).   Later that afternoon a third panel ruled that

23

should hear these cases.   That way, the question of whether judges can decline to apply certain binding precedent will be decided by a lower court, and reviewed here on appeal.

When district courts take the first close look at the cases of these prisoners who believe they are serving illegal sentences after Johnson, we have better odds of avoiding these problems.   District courts can hear from lawyers.   District courts can see and talk to the person serving the sentence.   District courts can find facts.   District courts can consider and develop the law.   These inmates will best be served by an opportunity, allowed by statute, to have their sentences reviewed by district courts.   But when we deny permission to file a successive § 2255 motion, AEDPA bars any further appeal or review of that decision.   Our denial of permission is the beginning and end of the case.

### III.

"Our court's massive effort to decide the merits of hundreds of habeas cases within 30 days each, all over a span of just a few weeks" was never necessary. McCall, 2016 WL 3382006, at *3 (Martin, J., concurring).   I count at least five

---

"Descamps cannot serve as a basis" for any Johnson claim.   See In re Hires, __ F.3d __, 2744, 2016 WL 3342668, at *5 (11th Cir. June 15, 2016).   Two days later, a fourth panel tried to reconcile the "tension" in these cases.   Rogers, 2016 WL 3362057, at *2 n.6.   That same day another panel held that we can ignore Descamps even for prisoners sentenced *after* Descamps. See In re Cook, No. 16-12745 (11th Cir. June 17, 2016) (unpublished).   Thomas, Adams, Hires, and Rogers are all published opinions, which means they set binding precedent.   All of this precedent was established in a very short time period without any of the deliberation or adversarial presentation that goes into a normal appeal.

ways in which this court stands alone in its response to Johnson.   First, "I am aware of no order from another court of appeals that combs through an applicant's presentence investigation report to decide the merits of his yet-unfiled motion without ever hearing from a lawyer.   And our court has done this in hundreds of cases."   Id. at *3 n.7.   Second, United States Sentencing Guideline § 4B1.2(a)(2) uses the same 13 words that Johnson invalidated, and "[a]ll eleven of the other courts of appeals have either held or assumed that Johnson makes the identical language in § 4B1.2(a)(2) unlawful."   Id. at *1 & n.1 (listing cases).   Our court alone insists otherwise.   See United States v. Matchett, 802 F.3d 1185 (11th Cir. 2015).   And again, our court set out on this path with no oral argument or adversarial briefing.[8]

Third, "[w]e were in the minority of courts that, from the beginning, said prisoners could not benefit from Johnson if they had already filed an earlier § 2255 motion."   McCall, 2016 WL 3382006, at *2 (Martin, J., concurring).   For months, that ruling "denied the application of Johnson to potentially hundreds of

---

[8] The Supreme Court will hear a case next term in which it can evaluate this court's ruling in Matchett.   See Beckles v. United States, No. 15-8544, 2016 WL 1029080 (U.S. June 27, 2016).   In that regard, it is noteworthy that our court has expanded the ruling in Matchett. While Matchett ruled in a case for which the inmate was serving a sentence imposed under the discretionary guideline system, our court has applied Matchett to hold that prisoners can't even make "a prima facie showing" that Johnson applies to the pre-Booker mandatory guidelines. See In re Griffin, __ F.3d __, 2016 WL 3002293 (11th Cir. May 25, 2016).   This decision was also made without any briefing or adversarial testing.   I say this is noteworthy because Travis Beckles was sentenced after Booker, so the Supreme Court's ruling in his case might not address the mandatory guideline issue our court decided in Griffin.

25

people based on pro se pleadings and without oral argument or briefing." In re Franks, 815 F.3d 1281, 1289 (11th Cir. 2016) (Martin, J., dissenting). The Supreme Court's ruling in Welch (remarkably issued only nineteen days after the case was argued), removed the obstacle to Johnson relief for people who had already filed a § 2255 motion. But then the inmates helped by Welch faced another obstacle. Only two months remained until the one-year limitations period for making Johnson claims ran out. In the Eleventh Circuit, over a hundred of those prisoners had tried to file motions seeking relief based on Johnson even before Welch was decided.

Most of those prisoners filed their applications in the three and a half months between the Welch certiorari grant and the day the case was decided. See In re Robinson, __ F.3d __, 2016 WL 1583616, at *2–*5 (11th Cir. Apr. 19, 2016) (Martin, J., concurring) (listing cases and dates). The Welch certiorari grant resulted in the fourth way in which our court took a divergent approach: "unlike all other circuits, the Eleventh Circuit refused to stay applications for successive § 2255 motions pending Welch."[9] Just before Mr. Leonard filed his first application, the full Eleventh Circuit refused to vacate the case that Welch eventually abrogated. See In re Rivero, No. 15-13089 (Mar. 16, 2016). Then, a

---

[9] Brief of the Federal Public and Community Defenders and the National Association of Federal Defenders as Amici Curiae in Support of Petitioner, at 4 n.3, Jones v. United States, No. 15-8629 (U.S. April 21, 2016). I have not verified this claim, but I see no reason to doubt it.

few days later, the full court also vacated a panel opinion that allowed the court to stay Johnson applications "until the Supreme Court decides Welch." In re Johnson, 810 F.3d 1247, 1253 (11th Cir. 2016). If either of those votes had gone the other way, hundreds of prisoners would have had more time to file their cases, and the judges of this court would have had more time to evaluate them. Instead, inmates had to re-file their applications, and this court had to decide the same cases again, this time in a crush of hundreds of new Johnson cases. Other courts took steps to avoid this problem.

Fifth, as far as I know, ours is the only court to force a decision on every one of these cases within 30 days of filing. See id. at 1249 n.1 (listing other courts' approaches). We do this based on § 2244(b)(3)(D), which says: "The court of appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion." Of course we never take lightly the word "shall" in a statute. But others who have considered this statute have concluded that "failure to comply with the thirty-day provision does not deprive this Court of the power to grant or deny a motion under § 2244(b)(3)(A)" because "the provision is hortatory or advisory rather than mandatory." In re Siggers, 132 F.3d 333, 336 (6th Cir. 1997). The Ninth Circuit recently observed about its experience deciding Johnson applications: "Given the large volume of second or successive applications our court must

27

process each month, it frequently takes us longer—sometimes much longer—than 30 days to rule." Orona v. United States, __ F.3d __, 2016 WL 3435692, at *2 (9th Cir. June 22, 2016). I can't help but think that if this court had taken the approach taken by others, our work on these cases would be both less frantic and more accurate.

On the topic of this court's singular approach, I add one more observation. The Supreme Court recently granted certiorari in the case of a Texas prisoner named Duane Buck. See Buck v. Stephens, No. 15-8049, __ S. Ct. __, 2016 WL 531661 (U.S. June 6, 2016). The Court took the case even though the lower court ruled that Mr. Buck's appeal was so meritless that he couldn't even file it. Mr. Buck's petition for certiorari asked: "did the United States Court of Appeals for the Fifth Circuit impose an improper and unduly burdensome Certificate of Appealability (COA) standard?" Our treatment of applications for successive § 2255 motions may be even more troubling than the issue raised in Buck. Unlike the denial of a COA, the statute governing applications like Mr. Leonard's provides that "denial of an authorization . . . to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." 28 U.S.C. § 2244(b)(3)(E). This means no motion for reconsideration, no motion for en banc review, no appeal, and no

28

petition for cert.    The decisions we make in these cases are therefore, as a practical matter, not reviewable.

A month after AEDPA (and with it, § 2244(b)(3)(E)) became law in April 1996, the Supreme Court held that these "new restrictions on successive petitions . . . do not amount to a 'suspension' of the writ."    Felker v. Turpin, 518 U.S. 651, 664, 116 S. Ct. 2333, 2340 (1996).    Three Justices filed a concurrence warning that "the question whether the statute exceeded Congress's Exceptions Clause power" might need to be revisited "if the courts of appeals adopted divergent interpretations of the gatekeeper standard."    Id. at 667, 116 S. Ct. at 2342 (Souter, J., concurring).    I hope someone better equipped than me will take this opportunity to look at whether the divergent views taken by this court require reexamination of this question asked by these Justices so soon after AEDPA was enacted.[10]

---

[10] This problem isn't limited to Johnson claims.    Our court recently denied a Johnson application based on the "concurrent sentence doctrine," which treats an illegal sentence as "harmless" if a prisoner is serving another sentence that is just as long as the illegal one.    In re Williams, __ F.3d __, 2016 WL 3460899, at *5 (11th Cir. June 24, 2016).    The Supreme Court has long warned that this doctrine is nothing more than a "rule of judicial convenience." Benton v. Maryland, 395 U.S. 784, 791, 89 S. Ct. 2056, 2061 (1969).    And our court had never before "applied harmless error or the concurrent sentence doctrine in the context of an application to file a second or successive § 2255 motion."    Williams, 2016 WL 3460899, at *5. Without any briefing or advocacy on the question, Williams held that this doctrine barred a prisoner from even filing his § 2255 motion.    Days later, a split panel used Williams to deny a pro se application for permission to file a § 2255 motion based on Miller v. Alabama, 567 U.S. __, 132 S. Ct. 2455 (2012).    See In re Hernandez-Miranda, No. 16-12893 (11th Cir. June 28, 2016) (unpublished).    Mr. Hernandez-Miranda was "a juvenile when he joined a conspiracy for which he was later sentenced to life without parole."    Id. at 13 (Martin, J., dissenting).

29

IV.

In deciding whether an inmate gets to pursue relief based on the Supreme Court's <u>Johnson</u> ruling, I believe the question should simply be whether his sentence was based on crimes that met ACCA's "violent felony" definition before <u>Johnson</u> but no longer do.[11]   The approach our court has taken instead is, I believe, fraught with hazard and subject to error.   As long as we continue this approach, we are bound to make more mistakes.   Our mistakes don't go away when we deny an application.   Prisoners whose applications we've mistakenly denied will file again.   And well they should.   The federal courts are the branch of government charged with administering justice in individual cases.   If we've made mistakes it is our job to fix them.   I hope Mr. Leonard's case is an exception, but I fear it is not.   And "if there are others who are wrongfully detained without a remedy, we should devote the time and incur the expense to hear their cases.   What is the role of the courts, if not this?"   <u>Gilbert v. United States</u>, 640 F.3d 1293, 1336 (11th Cir. 2011) (en banc) (Martin, J., dissenting).   In the cases we've gotten wrong, I hope lawyers continue to let us know.

---

Because of the restrictions on review of our rulings in this context, the panel's order was the beginning and end of Mr. Hernandez-Miranda's Eighth Amendment claim.

[11] The answer to that question should be "no" only if a sentence clearly was based on "serious drug offenses" or crimes that we have held are "violent felonies" after <u>Johnson</u>, <u>see</u> e.g., <u>United States v. Brown</u>, 805 F.3d 1325 (11th Cir. 2015) (per curiam); <u>United States v. Hill</u>, 799 F.3d 1318 (11th Cir. 2015) (per curiam).   Also, we can't assume any fact that the sentencing judge wasn't required to find.   <u>See</u> <u>Descamps</u>, 133 S. Ct. at 2289.   That means we can't assume everything in a PSI is true, regardless of whether the defendant objected.