JILL PRYOR, Circuit Judge,
concurring, joined by WILSON and ROSENBAUM; Circuit Judges:
The Supreme Court has told us that it violates the Constitution’s guarantee of due process to fix a sentence based on a person’s having committed a prior violent felony defined as “involv[ing] conduct that presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B)(ii) (containing the so-called “residual clause” of the Armed Career Criminal Act (“ACCA”)); Johnson v. United States, — U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015) (striking the residual clause as unconstitutionally vague). This definition of “violent felony,” the Supreme Court said, is “so shapeless a provision” that any attempt “to derive meaning from” it necessarily will be “a failed enterprise.” Johnson, 135 S.Ct. at 2560.
Since the Supreme Court decided in Johnson that this language is unconstitutionally vague, we have repeatedly misinterpreted and misapplied that decision. We have made the most errors in the- context of the Sentencing Guidelines. The Sentencing Guidelines’ career offender enhancement, just like the ACCA, applies when a defendant sentenced in federal court has been convicted of three violent felonies. U.S.S.G. §§ 4B1.1, 4B1.2(a)(2) (amended 2016).[1] Just like the ACCA, which lengthens a defendant’s maximum sentence of 10 years’ imprisonment to a minimum sentence of 15 years, the career offender enhancement has the effect of significantly increasing a defendant’s sentence. Sometimes, as a result of a defendant’s status as a career offender, his sentence more than doubles. Hundreds of applicants have asked this Court for the opportunity to request relief from the district court because they were subject to a much higher sentence due to 13 words the Supreme Court has held to violate an individual’s constitutional rights. But we nonetheless must deny these individuals the opportunity to even bring their claims to the district court’s attention because this Court has erected barriers to relief despite the Supreme Court’s unambiguous holding ' in Johnson.
II.
In throwing up these sorts of barriers, this Court consistently got it wrong. For starters, shortly after Johnson was decided, a panel of this Court limited severely the reach of that ruling by making relief unavailable to any inmate who previously had filed a motion to vacate his sentence under 28 U.S.C. § 2255. See In re Rivero, 797 F.3d 986 (11th Cir. 2015). The Supreme Court explained over a decade ago *1285 that a new substantive rule of constitutional law is retroactively applicable to cases under review in habeas proceedings. Schriro v. Summerlin, 542 U.S. 348, 351-52, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (applying Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)[2]). The Rivero panel acknowledged that in Johnson the Supreme Court announced a new substantive rule of constitutional law. 797 F.3d at 989.
But the panel refused to apply Johnson retroactively for two separate, newly formulated reasons. First, the panel held that Johnson could not be retroactively applicable, even to ACCA cases like Johnson itself, because “Congress could impose the punishment in Johnson if Congress did so with specific, not vague, language.” Id. at 991. And second, the Rivero panel held that for Johnson’s rule to be retroactively applicable to the career offender enhancement in the sentencing guidelines, under which Gilberto Rivero had been sentenced, the Supreme Court must also have held specifically that the guidelines are subject to vagueness challenges (which it had not). Id.
The Rivero panel’s holdings contradicted what the Supreme Court had already told us about retroactivity principles. And the panel provided no basis in Supreme Court precedent to justify these two newly minted barriers to relief for those sentenced based upon language the Supreme Court had just told us was unconstitutionally vague. As to the first holding, the Supreme Court previously implicitly rejected the idea that the prospect of Congressional intervention could limit the retroactive applicability of a new substantive rule.[3] As to the second holding in Rivero, nothing in the Supreme Court’s body of retroactivity law so much as hinted at a requirement beyond what Justice O’Connor described in Tyler v. Cain: “[I]f we hold in Case One that a particular type of rule applies retroactively to cases on collateral review and hold in Case Two that a given rule is of *1286 that particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review.” 533 U.S. 656, 668-69, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (O’Connor, J., concurring); see In re Holladay, 331 F.3d 1169, 1172-73 (11th Cir. 2003) (applying Justice O’Connor’s test to hold that the' Supreme Court had “made” the rule announced in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), barring the execution of intellectually disabled persons, retroactively applicable). Although the Rivero panel acknowledged that Justice O’Connor’s retroactivity test applied, it failed to employ the test as Justice O’Connor constructed it.
Nonetheless, because of Rivero, from August 2015 until April 2016 we denied relief to every inmate whose Johnson-based request to file a-second or successive § 2255 motion we decided. We even continued to deny inmates the opportunity to seek relief after the Supreme Court accepted certiorari in a case in which it would decide the issue of Johnson's retro-activity. See Welch v. United States, — U.S.-, 136 S.Ct. 790, 193 L.Ed.2d 534 (2016) (granting petition for certiorari).[4]
In Welch, the Supreme Court told us that we were wrong to hold that the rule announced in Johnson did not apply retroactively. 136 S.Ct. 1257, 1268 (2016). Welch was a case from our Circuit. Mr. Welch had filed a first § 2255 motion before Johnson was decided, challenging his ACCA sentence, which was based on the residual clause of that statute. Id. at 1263. The district court denied Mr. Welch relief, and he sought a certificate of appealability (“COA”) from this Court. Id. Even though he notified our Court that Johnson was pending in the Supreme Court and requested that his motion be held pending the Supreme Court’s decision, his motion for a COA was denied. Id. “Less than three weeks later,” the Supreme Court observed in overruling us on Johnson’s retroactivity, “this Court issued its decision in Johnson.” Id. We had denied Mr. Welch any opportunity for relief knowing that Johnson soon would be decided.[5]
The Supreme’ Court in Welch flatly rejected this Court’s Rivero holding that Johnson’s, rule was not retroactive. It noted that it had already rejected the argument that its decisions might not be retroactively applicable if Congress could “enact a new version of the residual clause that imposes the same punishment on the same persons for the same conduct, provided the new statute is precise enough to satisfy due process.” Id. at 1267; see Rivero, 797 F.3d at 991 (relying upon this reasoning). The “clearest example” the Court pointed out, was its prior decision in Bousley, which held a new rule to be retroactive “even though Congress could -(and later did) reverse [the rule announced in] Bailey by amending the statute.” Welch, 136 S.Ct. at 1267 (emphasis added); see supra note 3.
Welch was an ACCA case, and it did not speak to the guidelines. But the Supreme Court issued another decision this term that fatally undermines the Rivero panel’s alternative holding too. See Montgomery v. Louisiana, — U.S. -, 136 S.Ct. 718, *1287 193 L.Ed.2d 599 (2016). Remember, the Rivero majority acknowledged that the Johnson rule was a new substantive rule of constitutional law. 797 F.3d at 989. In Montgomery, the Supreme Court stated in no uncertain terms that “courts must give retroactive effect to new substantive rules of constitutional law.” 136 S.Ct. at 728 (emphasis added). So although the Rivero panel required that for Johnson’s rule to apply retroactively to the guidelines there be a third case holding that the guidelines could be void for vagueness, Montgomery reminded us that the inquiry is simpler. By the Rivero panel’s own analysis, the Johnson rale was a new substantive rule of constitutional law. Under Montgomery, that means the rule must be given retroactive effect. Montgomery ends the analysis there.[6] In short, we were wrong again.
III.
Even before the Supreme Court could decide Montgomery or Welch, this Court erected yet another barrier to relief for individuals who were sentenced under the very words the Johnson Court struck as unconstitutional. In United States v. Matchett, a panel of this Court held that the rule in Johnson did not apply to individuals sentenced under the advisory guidelines because those guidelines are not subject to the Due Process Clause’s vagueness doctrine. 802 F.3d 1185, 1193-94 (11th Cir. 2015). For the reasons articulated in Judge Wilson’s and Judge Rosenbaum’s concurrences in this case, I believe Match-ett was wrongly decided. In my view, which I share with my colleagues, Match-ett’ s holding was not grounded in the Constitution, the text of the career offender guideline, or any other solid legal foundation. Rather, the Matchett panel simply decreed that the advisory guidelines, unlike the ACCA, do not “fix punishments” and therefore are not subject to the limitations of due process. Id. at 1195. But in yet another case this term, the Supreme Court underscored that “the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar.” Molina-Martinez v. United States, — U.S. -, 136 S.Ct. 1338, 1346, 194 L.Ed.2d 444 (2016). “The Guidelines inform and instruct the district court’s determination of an appropriate sentence. In the usual case, then, the systemic function of the selected Guidelines range will affect the sentence.” Id.; see also id. at 1349 (“[The guidelines] serve as the starting point for the district court’s decision and anchor the court’s discretion in selecting an appropriate sentence.”). By any honest reading, the guidelines fix punishments. As such, in my view, their application must comport with due process.
Matchett’s reach in this Circuit is extensive. Now, no person whose advisory sentencing guidelines range was affected by the clause the Supreme Court held to be unconstitutionally standardless in Johnson may obtain relief, no matter how long he has been incarcerated or how diligently he has tried to preserve his claims. Bewilderingly, the Matchett panel erected this barrier even though the United States — the party responsible for the continued incarceration of career offenders — agreed with Mr. Matchett that the residual clause of *1288 the career offender guideline was unconstitutionally vague in light of Johnson. See Matchett, 802 F.3d at 1194.
IV.
This Court’s penchant for deciding these fundamentally important issues in orders on requests for authorization to file — in the absence of any substantive, adversarial briefing — is frustratingly familiar. We have received over 1,800 requests for authorization to file a second or successive § 2255 motion.since Welch was decided.[7] When an inmate makes such a request, we do not receive briefing from the parties. In nearly all of these cases, we never hear from the government. And at best, we receive a skeletal description of claims from the movant. At least as troublingly, the decisions we make are almost completely insulated from review.[8] I believe that in light of the limited time and resources we have to grant or deny authorization and the effective finality of our decision if we deny it, we should avoid making new substantive law in this procedural context.
Unfortunately, not all of my colleagues share my'view. In fact, a panel of this Court recently extended Matchett’s holding to cover individuals sentenced when the guidelines were mandatory rather than merely advisory. See In re Griffin, No. 16-12012, 823 F.3d 1350, 2016 WL 3002293 (11th Cir. May 25, 2016). I have previously expressed my view of why this decision was deeply flawed. See In re Sapp, No. 16- 13338, 827 F.3d 1334, 1336-41, 2016 WL 3648334, at *2-7 (11th Cir. 2016) (Jordan, Rosenbaum, and Jill Pryor, concurring). This is not the only time since Johnson was decided that we have taken a previous decision of our Court and extended it in the successive § 2255 motion context without any adversarial testing or opportunity for further review. See In re Williams, Nos. 16-13013, 826 F.3d 1351, 1356, 2016 WL 3460899, *4 (11th Cir. 2016) (extending the “concurrent sentence doctrine,” a rule the Supreme Court long ago said offers nothing more than “a rule of judicial convenience,”[9] to the second or successive § 2255 motion context); In re Hires, No. 16-12744, 825 F.3d 1297, 1301-02, 2016 WL 3342668, *4 (11th Cir. June 15, 2016) (extending the holding in Turner v. Warden Coleman FCI (Medium), 709 F.3d 1328 (11th Cir. 2013), that a conviction under Florida’s aggravated assault statute qualifies as a violent felony to the post-Johnson context without analyzing whether it qualifies notwithstanding Johnson and other Supreme Court precedent since Turner that would bear on the issue).
Instead of blazing new trails in the second or successive § 2255 motion context, the only issue we should decide is whether, under our existing precedent, the applicant has made a prima facie showing that his sentence was based on crimes that met the ACCA’s definition of “violent felony” before Johnson but no longer do.[10]
*1289 V.
When it comes to Matchett, we soon may be told we are wrong again. On the last day of this year’s term, the Supreme Court accepted certiorari in Beckles v. United States, No. 15-8544, — U.S.-, 136 S.Ct. 2510, 195 L.Ed.2d 838, 2016 WL 1029080 (U.S. June 27, 2016). Beckles is yet another Johnson case that originated in this Circuit. This time, the petitioner was sentenced as a career offender under the advisory guidelines rather than under the ACCA. So the Supreme Court, in deciding Beckles, the Supreme Court will decide the very issue that Matchett concerns.
If we simply asked whether, on our existing precedent, the applicant has made a prima facie showing that his sentence was based on crimes that met the definition of “violent felony” before Johnson but no longer do, we undoubtedly would be granting authorization to file second or successive § 2255 motions in more cases. At least then these many individuals who may be serving unconstitutional sentences would have a shot at meaningful review, first in the district court and then in this Court on appeal (and maybe even ultimately in the Supreme Court).
I recognize that the number of requests for authorization we have received in the wake of Johnson has been extremely taxing on our Court. We have been inundated with thousands of filings in addition to our regular court work. And I understand that published orders from this Court that categorically foreclose relief to whole groups of individuals, like Matchett and Griffin, may lessen that burden on district courts, too. But such prudential concerns are not reasons to refuse to remedy constitutional violations. As judges we are not sworn to shield district courts; rather, we are sworn to uphold the Constitution and vindicate the individual rights that the Constitution protects.
If the Supreme Court decides in Beckles that the residual clause in the career offender guideline is void for vagueness, there may be new hope for the scores of inmates who have tried to obtain relief since Johnson, only to be turned away by this Court based upon Matchett. I hope next time around we will avoid the mistakes I have identified. And I hope that, rather than being behind the march of justice, we, as our nation’s designated guardians, will be at the front.

. The ACCA enhancement applies when a person convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), previously has been convicted of three violent felonies or serious drug offenses. The career offender enhancement applies when a person convicted of a violent felony or drug offense previously has been convicted of two such offenses. Either way, three convictions are required to impose an enhancement.

. Teague set forth a general principle that new rules of law should not be applied retroactively. See Summerlin, 542 U.S. at 351-52, 124 S.Ct. 2519. New substantive rules, however, do apply retroactively. Id. at 352, 124 S.Ct. 2519.

. See Bousley v. United States, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). In Bousley, the Supreme Court declined to apply the general principle that new rules are not retroactive. Id. at 619-21, 118 S.Ct. 1604. Kenneth Bousley was convicted in 1990 of "using” a firearm in violation of 18 U.S.C. § 924(c)(1). Id. at 616, 118 S.Ct. 1604. After the Eighth Circuit affirmed his conviction, Mr. Bousley filed for collateral relief. Id. at 617, 118 S.Ct. 1604. While his appeal from the district court's denial of habeas relief was pending, the Supreme Court held in Bailey v. United States that § 924(c)(l)’s “use” prong required the government to prove “active employment of the firearm.” 516 U.S. 137, 144, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Because Mr. Bousley contended that he merely possessed a firearm during his offense, he argued based on Bailey that his conduct failed to qualify under § 924(c). Bousley, 523 U.S. at 617-18, 118 S.Ct. 1604. Amicus, arguing against retroactivity (because the government agreed with Mr. Bousley that he could benefit from Bailey's rule) urged the Supreme Court to apply a Teague bar to Mr. Bousley's claim. The Supreme Court declined, holding that Bailey necessarily was available to Mr. Bous-ley on collateral review because Bailey announced a new substantive rule. Id. at 620-21, 118 S.Ct. 1604; see United States v. Peter, 310 F.3d 709, 711 (11th Cir. 2002) (citing Bousley for the proposition that "[d]ecisions of the Supreme Court construing substantive federal criminal statutes must be given retroactive effect”). As I explained in dissent in Rivero, Congress was in the process of amending § 924(c)(1) to recriminalize the conduct the Court in Bailey held to fall outside the statute’s scope. Rivero, 797 F.3d at 999 (Jill Pryor, J., dissenting). Ultimately, the .so-called “Bailey Fix Act” passed, but this had no bearing on the Supreme Court's retro-activity decision in Bousley. Id. at 999-1000.

. We apparently were the only Circuit in the nation to have routinely refused to hold in abeyance inmates' applications pending the Welch retroactivity decision. See Brief of the Federal Public and Community Defenders and the National Association of Federal Defenders as Amici Curiae in Support of Petitioner, at 4 n.3, Jones v. United States, No. 15-8629 (U.S. April 21, 2016).

. And, of course, had Mr. Welch sought permission from us to file a second § 2255 motion based on Johnson, we would have denied him based on Rivero.'

. The Rivero panel’s observation that the guidelines must also be subject to a vagueness challenge in order for Mr. Rivero to obtain relief is not wrong (although I disagree with Rivero's suggestion, later born out in Match-ett, that the guidelines cannot be unconstitutionally vague). Rather, the observation was wrongly imported into the retroactivity analysis. That inquiry belongs instead in an examination of whether any particular inmate has a meritorious Johnson claim. There is no prece-dential support for the proposition that these two inquiries somehow are related.

. By my rough calculation, approximately one third of inmates making such requests were seeking relief from their guidelines-based sentences.

. See 28 U.S.C. § 2244(b)(3)(E) ("The grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.”).

. Benton v. Maryland, 395 U.S. 784, 789-91, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

. Cf. In re Leonard, Nos. 16-13528, 16-13804, 16-13857, slip op. at 29-30 & n. 11, 655 Fed.Appx. 765, 778 & n. 11, 2016 WL 3885037 (11th Cir. July 13, 2016) (Martin, J„ concurring) (explaining that the question in the context of a request for authorization to file a successive § 2255 motion "should simply be whether [an inmate's] sentence was *1289 based on crimes that met ACCA’s 'violent felony' definition before Johnson but no longer do,” and noting that the answer "should be 'no' only if a sentence clearly was based on 'serious drug offenses' or crimes that we have held are 'violent felonies’ after Johnson” in light of facts the sentencing court found).